COMMONWEALTH of Pennsylvania, Appellee

v.

Robert Lee McADOO, Appellant.

Superior Court of Pennsylvania.

Argued March 13, 2012.
Filed June 6, 2012.

Andrea Haynes, Public Defender, Harrisburg, for appellant.

Chase M. DeFelice, Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., PANELLA, J., and MUNDY, J.

OPINION BY STEVENS, P.J.:

This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Dauphin County after Appellant Robert McAdoo was convicted of possession of a controlled substance with intent to deliver, possession of a small amount of marijuana, and possession of drug paraphernalia.[1] Appellant claims the trial court erred in denying his suppression motion when officers illegally detained him by requesting his identification without reasonable suspicion of criminal activity. We affirm.

On April 8, 2010, the Harrisburg City Police Department received a tip from an

---

1. 35 P.S. § 780–113(a)(30), (31), and (32), respectively.

individual residing in a halfway house who reported that another resident had confessed to a homicide and claimed he buried the body in a wooded area behind Hall Manor two days earlier. Hall Manor is a federal housing community known for its large volume of drug activity and violent crimes; officers investigate assaults, burglaries, robberies, and homicides there on a regular basis. The informant also indicated the alleged murderer had recently escaped from the halfway house.

Upon receiving this tip, four Harrisburg police officers commenced a search behind Hall Manor to locate the dead body. During their search, the officers observed a man standing alone in the woods. Officer Fenton approached him and asked what he was doing there. The man, later determined to be Appellant, replied that he was on his cell phone. Officer Simmons indicated the officers were "canvassing the area," and asked for Appellant's name. After Appellant identified himself, Officer Simmons relayed his name to the police communication center for a warrant check.

Given the police suspected a murderer had recently buried his homicide victim in these woods, Officer Simmons expressed concern about his safety as he was unable to see Appellant's hands as Appellant's back was facing the officers. Officer Simmons told Appellant it was necessary to frisk him for the officers' safety. When conducting a patdown of Appellant's pants pockets, Officer Simmons indicated he felt a hard object inside plastic, but did not remove it. Shortly thereafter, the police communication center reported to Officer Simmons that Appellant had an arrest warrant for a parole violation. As such, Officer Simmons placed Appellant under arrest, conducted a search incident to arrest, and discovered Appellant in possession of a baggie containing 3.4 grams of cocaine, a baggie containing 3.1 grams of marijuana, two cell phones, a razor blade, and $20 U.S. currency.

After Appellant was charged with the aforementioned offenses, he filed a motion to suppress the evidence obtained from his person, which the trial court subsequently denied. On April 12, 2011, Appellant proceeded to a stipulated waiver trial in which the trial court convicted him on all charges and imposed an aggregate sentence of two to four years imprisonment in state prison. This timely appeal followed.

 Appellant raises one issue for our review on appeal:

> [DID] THE SUPPRESSION COURT ERR[ ] IN DENYING APPELLANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE OBTAINED AS A RESULT OF AN ILLEGAL SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 8 OF THE PENNSYLVANIA CONSTITUTION?

Appellant's Brief, at 4. When reviewing a challenge to a trial court's denial of a suppression motion, our standard of review is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclu-

sions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Hoppert,* 39 A.3d 358, 361–62 (Pa.Super.2012) (quoting *Commonwealth v. Jones,* 605 Pa. 188, 198, 988 A.2d 649, 654–56 (2010)).

 Appellant claims the evidence confiscated from his person should have been suppressed because the officers subjected him to an unlawful seizure when they approached him and requested identification. The Fourth Amendment of the U.S. Constitution and Article I, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures. To safeguard this right, courts require police to articulate the basis for their interaction with citizens in increasingly intrusive situations:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Downey,* 39 A.3d 401, 405 (Pa.Super.2012) (citation omitted).

In determining whether a citizen was subjected to an investigative detention by police, our courts have utilized the following standard:

> To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Id.* (quoting *Commonwealth v. Coleman,* 19 A.3d 1111, 1116 (Pa.Super.2011)).

As noted above, Appellant limits his argument to claim the officers' request for identification constituted an unlawful investigative detention.[2] To support his argument, Appellant relies on this Court's decision in *Commonwealth v. Au,* 986 A.2d 864 (Pa.Super.2009) (*en banc*),[3] in which an *en banc* panel of this Court found that an officer's request for identification from a group of teenagers constituted an investigative detention unsupported by reasonable suspicion. In *Au,* an officer on routine patrol after midnight observed an automobile parked in the lot of a local business, which had closed several hours earlier. The officer decided to see if the vehicle's occupants needed assis-

---

**2.** As Appellant does not challenge the legality of the officer's frisk or the search incident to his arrest, we need not address these issues.

**3.** As discussed *infra,* the Supreme Court recently reversed this Court's en banc decision in *Commonwealth v. Au,* 42 A.3d 1002 (Pa. 2012).

tance as it was unusual to see a car in the lot at such a late hour. Without activating his emergency lights, the officer parked his vehicle so that his headlights illuminated the passenger side of the vehicle.

When the officer approached the parked vehicle with a flashlight, the passenger rolled down his window. The officer asked the passenger (later determined to be Au) what was "going on" and Au responded that he was just hanging out with a group of friends. After the officer noticed six young-looking teenagers seated in the car, he asked if everyone was 18 years old. When some of the occupants responded in the negative, the officer requested identification from the vehicle's occupants. When Au opened up the car's glove compartment, the officer saw two baggies of marijuana. The officer went to the other side of the car and noticed drugs on the driver's side as well. Au subsequently charged with possession of marijuana. Prior to his trial, Au filed a motion to suppress the evidence confiscated from the vehicle, which the trial court subsequently granted. A three-judge panel of this Court affirmed on appeal.

After Au's petition for reargument was granted, a sharply divided 5–4 *en banc* panel of this Court affirmed the trial court's decision to suppress the evidence obtained from this encounter, which it deemed an investigatory detention from the point the officer asked the vehicle's occupants for identification. *Id.* at 867. The majority felt that a reasonable person would not have felt free to terminate this encounter, given that a uniformed officer directed his cruiser's headlights at the vehicle, approached and asked the teens to explain why they were at this location, and asked for identification after he was seemingly "unsatisfied" with the occupants' response to his inquiry. *Id.*

Judge Shogan filed a vigorous dissent, in which she argued that a police officer's approach and request for identification from a citizen does not necessarily reach beyond a mere encounter. After viewing the totality of the circumstances, the dissent reasoned that the officer, whose conduct or words did not restrain Au in any way, was permitted to ask for Au's identification as this request for information was a mere encounter requiring no level of suspicion. *Id.* at 872–73. The dissent found the officer's request was not an invasion of Au's privacy and relied on the United States Supreme Court's opinion in *Hiibel v. Sixth Judicial District Court of Nevada,* 542 U.S. 177, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004), which states:

> Asking questions is an essential part of police investigations. In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment. "[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure."

*Id.* at 185, 124 S.Ct. at 2458 (quoting *INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984)). The dissent also pointed to Pennsylvania Supreme Court precedent in which our High Court concluded that police officers' requests for citizens' identification did not amount to unlawful seizures, but remained mere encounters. *Au,* 986 A.2d at 871 (citing *Commonwealth v. Smith,* 575 Pa. 203, 217, 836 A.2d 5, 13–14 (2003); *Commonwealth v. Dowds,* 563 Pa. 377, 387, 761 A.2d 1125, 1130 (2000); *Commonwealth v. Boswell,* 554 Pa. 275, 284, 721 A.2d 336, 340 (1998)).

Although Appellant bases his entire argument on this Court's *en banc* decision in *Au,* the Pennsylvania Supreme Court recently reversed the majority's holding and

adopted the analysis contained in Judge Shogan's dissent. *Commonwealth v. Au*, 42 A.3d 1002, 1007 (Pa.2012). Guided by the decision of the United States Supreme Court in *Hiibel*, our state Supreme Court held that "a request for identification is not to be regarded as escalatory in terms of the coercive aspects of a police-citizen encounter." *Id.* The Supreme Court found the officer's request for information did not constitute an illegal investigatory detention when the officer did not "activate the emergency lights on his vehicle, position his vehicle as to block the car that [Au] was seated in from exiting the parking lot, brandish his weapon, make an intimidating movement or overwhelming show of force, make a threat or a command, or speak in an authoritative tone." *Id.* at 1007–09. As the officer's interaction with Au was a mere encounter requiring no level of suspicion, the Supreme Court held the evidence should not have been suppressed.

Likewise, in this case, we find that the officers' interaction with Appellant did not escalate beyond a mere encounter simply because the officers asked for Appellant's name. After receiving a tip that a homicide victim's body was buried behind Hall Manor and the murderer had recently escaped from a halfway house, several police officers began searching the woods behind Hall Manor, an area known for drugs and violence. Two officers approached Appellant who was standing in the middle of the woods in the early evening hours. The officers did not inform Appellant they were investigating a murder or that he was suspected of criminal activity, but simply explained that they were "canvassing the area" and asked why he was in the woods. There is no evidence that the officers used an authoritative tone or displayed a threatening demeanor.

As the officer's interaction with Appellant did not rise above a mere encounter, the officer was free to ask Appellant for his name without implicating the Fourth Amendment. Accordingly, the trial court did not err in refusing to suppress the evidence obtained upon Appellant's arrest. We affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.