J-A22037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RICHARD ARDEN REDMAN | |
| Appellant | No. 930 MDA 2014 |

Appeal from the Judgment of Sentence May 13, 2014
in the Court of Common Pleas of Bradford County
Criminal Division at No(s): CP-08-CR-0000580-2013

BEFORE:  BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:                    **FILED JUNE 10, 2016**

Appellant Richard Arden Redman appeals from the judgment of sentence entered on May 13, 2014 following his bench trial convictions of three counts of driving under the influence ("DUI").[1]  Appellant challenges the denial of his motion to suppress.  After careful consideration, we affirm.

On February 27, 2013, at approximately 2:30 a.m., the Pennsylvania State Police dispatched Trooper David Sweeney to the scene of a one-car accident.  N.T. 10/11/2013, p. 2.  Three to four minutes later, Trooper Sweeney arrived at the scene and observed a white male (later identified as

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(a)(1), (b), and (c).

Appellant) lying in the middle of the crash scene, and a white pickup truck in a pond. *Id.* at 2-3.

Trooper Sweeney approached Appellant, smelled alcohol, and noted Appellant's eyes were bloodshot and glossy. N.T. 10/11/2013, p. 4. Appellant was conscious and yelling. *Id.* at 3-4. Appellant told Trooper Sweeney that he was not the driver of the truck. *Id.* Some ten to fifteen minutes later, emergency medical personnel removed Appellant and took him by ambulance to a hospital approximately 30 minutes away. *Id.* at 5.

Trooper Sweeney remained at the scene and continued to investigate the crash. N.T. 10/11/2013, p. 5. He ascertained that Appellant had driven across the double yellow line, hit an embankment, and flipped his truck. *Id.* Appellant's girlfriend arrived at the scene together with a bartender from the Knight's Out Bar, where Appellant and his girlfriend had been earlier in the evening. *Id.* at 6-7. The bartender was driving Appellant's girlfriend home. *Id.* Both the girlfriend and the bartender stated that Appellant had consumed alcohol at the Knight's Out and driven away in the truck. *Id.* They noted that Appellant left the bar, which was four to five miles from the crash scene, at approximately 2:05 a.m. *Id.* at 10.

Trooper Sweeney left the scene and drove to the hospital. N.T. 10/11/2013, pp. 7-8. When he arrived, Trooper Sweeney discovered the medical staff had intubated Appellant, rendering him unconscious and unable to consent to a blood draw. *Id.* at 8. Trooper Sweeney directed the medical staff to draw Appellant's blood and they complied at 3:40 a.m. *Id.* Lab

results showed that Appellant had a blood alcohol content of 0.185. *Id.* at 9.

On August 13, 2013, the Commonwealth filed a criminal information charging Appellant with DUI. On August 19, 2013, Appellant filed a motion to suppress his blood test results. The trial court conducted a suppression hearing on October 11, 2013. At the hearing, Trooper Sweeney testified to the above information. On cross-examination, Trooper Sweeney admitted that a magisterial district justice ("MDJ") was on call on the night in question, and that a procedure was in place for obtaining a warrant. N.T. 10/11/2013, p. 10. However, Trooper Sweeney testified that he was familiar with the procedure for obtaining a blood draw without a warrant. *Id.* at 14.

The trial court denied Appellant's motion to suppress on December 4, 2013. Thereafter, on March 11, 2014, the trial court conducted a non-jury trial and found Appellant guilty of DUI. On May 13, 2014, the trial court sentenced Appellant to a term of incarceration of 72 hours to six months. The instant, timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[2]

Appellant raises the following questions for our review:

---

[2] On September 30, 2014, the trial court filed a statement in lieu of a Pa.R.A.P. 1925(a) opinion that adopted the court's December 4, 2013 opinion denying Appellant's motion to suppress as its Pa.R.A.P. 1925(a) opinion in this matter.

1.    [Whether] 75 Pa.C.S.[ §] 3755 is unconstitutional as it violates a defendant's federal constitutional right against a warrantless seizure thus the warrantless blood draw of Appellant should have been suppressed[?]

2.    [Whether the trial court] erred as a matter of law in failing to suppress Appellant's blood test results as [the court's] factual finding that the dissipation of alcohol in Appellant's blood and the two hour rule were exigent circumstances negating the necessity of a warrant [was erroneous] [?]

Appellant's Brief, p. 2.

This Court's well-settled standard of review of a denial of a motion to suppress evidence is as follows:

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.  Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.  Thus, the conclusions of law of the courts below are subject to [] plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa.2010) (internal citations and quotation marks omitted).  Moreover, our scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing.  *In re L.J.*, 79 A.3d 1073, 1087 (Pa.2013).

Appellant's claims center first on the question of the constitutionality of 75 Pa.C.S. § 3755 and, second, on an exigent circumstances argument closely related to the constitutionality of section 3755.[3]  However, for the reasons that follow, we find that 75 Pa.C.S. § 1547, the Vehicle Code's Implied Consent Law, controls.  Accordingly, we need not reach Appellant's section 3755 issues.

"The Fourth Amendment of the U.S. Constitution and Article I, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures."  ***Commonwealth v. McAdoo***, 46 A.3d 781, 784 (Pa.Super.2012).  "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies."  ***Commonwealth v. Strickler***, 757 A.2d 884, 888 (Pa.2000).  Established exceptions to the warrant requirement include actual consent, implied consent, search incident to lawful arrest, and

_____

[3] "Our courts have found that, together, [75 Pa.C.S.] sections 1547 and 3755 comprise a statutory scheme which, under particular circumstances, not only imply the consent of a driver to undergo chemical or blood tests, but also require hospital personnel to withdraw blood from a person, and release the test results, at the request of a police officer who has probable cause to believe the person was operating a vehicle while under the influence."  ***Commonwealth v. Barton***, 690 A.2d 293, 296 (Pa.Super.1997), *appeal denied*, 700 A.2d 437 (Pa.1997).  Appellant acknowledges this scheme in his brief.  ***See*** Appellant's Brief, p. 5. Appellant believes the two statutes to be separate and distinct, however, and does not challenge the constitutionality of 75 Pa.C.S. § 1547.  ***See*** Appellant's Brief, p. 4.

exigent circumstances. *See Commonwealth v. Riedel*, 651 A.2d 135, 139 (Pa.1994).

The Vehicle Code's Implied Consent Law provides, in relevant part, as follows:

**§ 1547. Chemical testing to determine amount of alcohol or controlled substance**

**(a) General rule.--**Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock); or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

75 Pa.C.S. § 1547. Further, the Implied Consent Law "grants an explicit right to a driver who is under arrest for driving under the influence to refuse to consent to chemical testing." *Commonwealth v. Eisenhart*, 611 A.2d 681, 683 (Pa.1992). The statute provides, in pertinent part:

**(b) Suspension for refusal.--**

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted. . .

75 Pa.C.S. § 1547(b).

Individuals not under arrest at the time a blood test is administered, however, cannot claim the explicit statutory protection of section 1547(b). *Riedel*, 651 A.2d at 142. Likewise, individuals who are unconscious at the time of a blood draw, or whose blood is drawn for medical treatment purposes, are not entitled to section 1547(b)'s explicit right to refuse. Our Supreme Court has explained:

> [W]e will not engraft an additional provision onto the Implied Consent Law. The decision to distinguish between classes of drivers in the implied consent scheme is within the province of the legislature. We will not reformulate the law to grant an unconscious driver or driver whose blood was removed for medical purposes the right to refuse to consent to blood testing.

*Id.*

Here, Appellant was involved in a motor vehicle accident that required treatment at a medical facility and police suspected him of operating a vehicle while under the influence of alcohol. Accordingly, he impliedly consented to testing of his blood. *See* 75 Pa.C.S. § 1547(a). Further, Appellant could not avail himself of the statutory right to refuse testing because, when Trooper Sweeney arrived at the hospital, Appellant (1) had not been placed under arrest, and (2) was intubated, unconscious, and unable to consent to a blood draw. *See Riedel*, 651 A.2d at 142.

Because Appellant impliedly consented to the blood draw and did not revoke that consent, the trial court did not err in refusing to suppress the results of Appellant's blood test. Accordingly, we affirm the trial court's

- 7 -

order. ***Commonwealth v. Moser***, 999 A.2d 602, 606 n.5 (Pa.Super.2010) ("[T]his Court may affirm a decision of the trial court if there is any basis on the record to support the trial court's actions, even if we rely on a different basis.").

Order affirmed.

Judge Bowes joins in the memorandum.

Judge Platt concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/10/2016