J. S30022/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
KEITH WHALEY, : No. 1781 EDA 2015
:
Appellant :


Appeal from the Judgment of Sentence, June 11, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0013260-2014


BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., AND JENKINS, J.


MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JULY 26, 2016**

Keith Whaley appeals from the judgment of sentence entered by the

Court of Common Pleas of Philadelphia County on June 11, 2015, following

his conviction in a waiver trial of firearms not to be carried without a license;

persons not to possess, use, manufacture, control, sell or transfer firearms;

and carrying firearms on public streets or public property in Philadelphia.[1]

We reverse.

The suppression court summarized the procedural and factual history

as follows:

> I.    OVERVIEW AND PROCEDURAL HISTORY
>
> . . . .  This appeal stems from a search of [appellant]
> and seizure of an unlicensed gun.  On October 5,

---
[1] 18 Pa.C.S.A. § 6106(a)(1), 18 Pa.C.S.A. § 6105(a)(1), and 18 Pa.C.S.A.
§ 6108, respectively.

2014, Philadelphia police officers received a radio call with flash information describing [appellant] and another burglary suspect at 4850 North 7th Street, Philadelphia, Pennsylvania. [Appellant] was frisked after matching the flash description near the stated location and displaying suspicious and furtive behavior. During the frisk, the police officer felt the handle of a gun in [appellant's] right pocket and subsequently discovered a revolver. Upon recovering the item, the officer arrested [appellant] after which he was charged with Firearms Not to be Carried Without License (F3), Possession of Firearms Prohibited (M1), and Carrying a Firearm on Public Streets in Philadelphia (M1).

On January 20, 2015, [appellant] filed a Motion to Suppress in which he sought to suppress physical evidence. On March 24, 2015, this court held a hearing on the matter and at the conclusion of the hearing denied [appellant's] Motion to Suppress. On that same day, a non-jury trial was held at which [appellant] was found guilty of the aforementioned charges. A pre-sentence investigation was also ordered. On June 11, 2015, this court sentenced [appellant] to eleven-and-a-half (11 ½) to twenty-three (23) months of incarceration plus five (5) years reporting probation at the State Correctional Institution with credit for time served.

. . . .

II.    FACTUAL HISTORY

Philadelphia Police Officer Eric Girill, assigned to the 35th District, testified that on October 5, 2014, at approximately 6:16 p.m., he was fully uniformed on a routine patrol with his partner, Officer McClain, in a marked police vehicle when he received a flash radio call that two black males in dark clothing were breaking into the rear of the residence at 4850 North 7th Street, Philadelphia, Pennsylvania. (N.T. 3/24/15 pp. 4, 5, 6, 7, 12, 14).[Footnote 4] At the time of trial, Officer Girill had been a police officer for nine (9) years. (N.T. 3/24/15 p. 5). He had been at

the 35th district for five (5) months and the 18th district prior to that time. *Id.* At the time of the radio call, Officer Girill and his partner were no more than three (3) blocks away from the location. (N.T. 3/24/15 p. 7). Both officers proceeded to 4850 North 7th Street with sirens turned on and arrived in less than one (1) minute. (N.T. 3/24/15 pp. 17, 22). Officer Girill also testified that prior to entering the alleyway, the sirens were turned off. (N.T. 3/24/15 p. 22).

> [Footnote 4] All references to the record refer to the transcript of the suppression hearing and trial recorded on March 24, 2015.

Officer Girill testified that it was daylight when he and his partner arrived at the above location. (N.T. 3/24/15 p. 11). Both officers proceeded directly to the rear of the residence in question. (N.T. 3/24/15 p. 7). As Officer Girill drove through, he observed two (2) males walking southbound in the alleyway close to 4850 North 7th Street. (N.T. 3/24/15 pp. 7, 9). The officer described the alleyway as a "typical row home alleyway," twenty[-]five (25) to thirty (30) feet in length, with row homes on both sides of the alleyway. (N.T. 3/24/15 p. 9). Further, the officer testified that the width of the alleyway would allow two (2) cars to be parked parallel to each other (N.T. 3/24/15 pp. 15, 16).

Upon seeing the two (2) males, Officer Girill ordered them to stop. (N.T. 3/24/15 p. 7). One male stopped and the other male, [appellant] continued to walk southbound with his hands in his pocket. *Id.* Officer Girill then ordered [appellant] to stop. *Id.* In response, [appellant] turned and concealed the right side of his body behind a parked car located behind another residence half-way down the alleyway. (N.T. 3/24/15 pp. 7, 8). Officer Girill later testified, he thought [appellant] was hiding a weapon due to the numerous calls received within a month of a robbery, a person with a gun including a

point-of-gun robbery, and similar activity. (N.T. 3/24/15 p. 24). As Officer Girill proceeded to approach [appellant], Officer McClain stayed behind with the other male. (N.T. 3/24/15 pp. 8, 11). As Officer Girill came closer to [appellant], [appellant] stared at Officer Girill and shook his head as the officer apprehended him. (N.T. 3/24/15 pp. 8, 9). Officer Girill testified there were several other men present in the alleyway, "hanging out," at the same time as he and [appellant] were stopped. (N.T. 3/24/15 p. 9). Officer Girill also testified there was a parked vehicle in the middle of the alleyway with a couple inside of it. *Id.*

Officer Girill testified that as he patted down [appellant], he felt a gun in [appellant's] right hip [pocket] which was the same hip that [appellant] had concealed behind the parked car. (N.T. 3/24/15 pp. 7, 9). Officer Girill also stated that when he pat[ted] down [appellant], he immediately felt the handle of the gun in [appellant's] right pocket, and that he believed it only to be a gun. (N.T. 3/24/15 p. 12). Moreover, he stated that he had felt the handle of a revolver a few dozen times before in his experience as a police officer. *Id.* Officer Girill made an in-court identification of [appellant] as Keith Whaley. (N.T. 3/24/15 p. 8).

Trial court opinion, 10/30/15 at 1-4 (Footnotes 1-3 omitted).

Appellant raises the following issue for our review:

Where [appellant] was detained and searched solely on the basis of an unfounded radio call for two men that were trying to gain entry to the rear of a property and [appellant] was one of several males in the alley, was not such detention and search unsupported by reasonable suspicion or probable cause, in violation of the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, and therefore should not the physical evidence subsequently seized by the police have been suppressed?

Appellant's brief at 3.

Our standard of review for challenges to the denial of a suppression motion is as follows:

> [We are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. McAdoo***, 46 A.3d 781, 783-784 (Pa.Super. 2012), ***appeal denied***, 65 A.3d 413 (Pa. 2013) (citations omitted).

Under our Fourth Amendment jurisprudence, three levels of interactions between citizens and police officers exist:  a mere encounter, an investigative detention, and a custodial detention or an arrest. ***Commonwealth v. Downey***, 39 A.3d 401, 405 (Pa.Super. 2012), ***appeal denied***, 50 A.3d 124 (Pa. 2012) (citation omitted).

There exists no dispute that the instant appeal involves an investigatory detention. An investigatory detention subjects an individual to a stop and short period of detention. *Id.* This seizure does not involve actions that are so coercive as to comprise the equivalent of an arrest. *Id.* To conduct an investigative detention, police must have reasonable suspicion of criminal activity. *Id.*

Reasonable suspicion exists "if the police officer's reasonable and articulable belief that criminal activity was afoot is linked with his observation of suspicious or irregular behavior on behalf of the particular defendant stopped." *Commonwealth v. Kearney*, 601 A.2d 346, 348 (Pa.Super. 1992) (citation omitted).

> [Moreover,] [i]f the police respond to an anonymous call that a particular person at a specified location is engaged in criminal activity, and upon arriving at the location see a person matching the description but nothing more, they have no certain knowledge except that the caller accurately described someone at a particular location . . . . The fact that a suspect resembles the anonymous caller's description does not corroborate allegations of criminal conduct, for anyone can describe a person who is standing in a particular location at the time of the anonymous call. Something more is needed to corroborate the caller's allegations of criminal conduct.

*Commonwealth v. Wiley*, 858 A.2d 1191, 1194-1195 (Pa.Super. 2004), quoting *Commonwealth v. Hawkins*, 692 A.2d 1068, 1070 (Pa. 1997) (other citations omitted). Additionally, it is well settled that "[m]ere presence near a high crime area or in the vicinity of a recently reported

crime, is not enough to warrant a *Terry*[2] stop." *Commonwealth v. Kearney*, 601 A.2d 346, 348 (Pa.Super. 1992) (citations omitted). Rather, a police officer "must observe irregular behavior **before** he initiates a stop and, **concurrently to his observation**, he must hold a belief that criminal activity is afoot." *Id.* (citations omitted and emphasis added).

Here, appellant was seized for constitutional purposes at the moment Officer Girill ordered him to stop. This is so because the relevant inquiry is whether a reasonable person who is innocent of any crime would have thought he was being restrained had he been standing in defendant's shoes. *See Commonwealth v. Jones*, 378 A.2d 835, 840 (Pa. 1977). As soon as Officer Girill ordered appellant to stop, a reasonable person standing in appellant's shoes would have felt that he was not free to depart. For that seizure to be lawful, then, Officer Girill must have developed a reasonable suspicion prior to ordering appellant to stop.

The record clearly establishes that Officer Girill responded to a radio call based on an anonymous tip concerning two African American men at a specified location who were allegedly engaged in a burglary.[3] (Notes of testimony, 3/24/15 at 6, 13.) Upon arriving at the location within one minute of receiving the radio call, Officer Girill saw appellant, an African

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

[3] Officer Girill testified that the tip was later determined to be unfounded. (Notes of testimony, 3/24/15 at 13.)

J. S30022/16

American man, and his companion walking down an alleyway, as well as five other black males "hanging out in the area." (*Id.* at 7, 19.)  Officer Girill did not observe appellant engage in any irregular or suspicious activity **prior to** directing him to stop, as demonstrated by the following colloquy:

> Q.  When you got to the location, did you go to the front or to the back?
>
> A.  We went directly to the rear.
>
> Q.  What happened when you went to the rear?
>
> A.  As we pulled through, I was driving.  I looked to my left and I observed two males walking southbound through the alleyway.
>
> Q.  What did you do when you saw those two males?
>
> A.  Ordered them to stop.
>
> Q.  And what happened?
>
> A.  The one stopped.  The other one proceeded to walk southbound with his hands in his pocket.
>
> Q.  And what else happened?
>
> A.  We asked him to stop again.  At that point he turned and he concealed the right side of his body behind a parked car.
>
> . . . .
>
> Q.  Was there anybody else other than you and the defendant?
>
> A.  There were several other men out there. Again, there was a car parked right in the middle of the alleyway.  There was a couple

> > inside it and the rest were just hanging out around it.
>
> > Q. Officer, when you frisked the defendant, why did you do so?
>
> > A. Because he walked away with his hands in his pocket. We [sic] refused to stop. And then he was -- it appeared he was trying to hide something behind the vehicle.

*Id.* at 7, 11.

The record clearly reflects that when Officer Girill first saw appellant, he saw several African American males in the area, including appellant who was merely walking with another man through an alleyway that happened to be in the vicinity of a recently reported crime allegedly being committed by two African American men. Nevertheless, Officer Girill ordered appellant to stop. It was not until after Officer Girill ordered appellant to stop that the officer observed appellant attempting to conceal the right side of his body behind a parked car and hide something behind that vehicle. (*Id.* at 7, 11.)

Because appellant's suspicious and irregular behavior of attempting to conceal something behind the vehicle occurred after Officer Girill initiated the stop, our case law dictates that the stop was illegal and, therefore, the suppression court's legal conclusion constituted error. Accordingly, the fruit of the illegal seizure must be suppressed.

Judgment of sentence reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2016