J. S63002/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
 :           PENNSYLVANIA
         v.           :
 :
KYLE WHITE,                :      No. 2466 EDA 2015
 :
         Appellant    :


Appeal from the Judgment of Sentence, June 26, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0009289-2014


BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND FITZGERALD,* JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED JANUARY 18, 2017**

Kyle White appeals from the judgment of sentence entered on June 26, 2015 in the Court of Common Pleas of Philadelphia County after his conviction in a waiver trial of possession of a firearm, possession with intent to manufacture or deliver, intentional possession of a controlled substance by person not registered, and possession of instruments of crime.[1]  The trial court sentenced appellant to an aggregate term of imprisonment of four to eight years, followed by three years of probation.  We affirm.

The trial court set forth the following factual history:

> On May 16, 2014, at approximately 9:45 p.m., Officer [Jonathan] Czapor set up plainclothes

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6105(a)(1), 35 P.S. § 780-113(a)(30), 35 P.S. § 780-113(a)(16), and 18 Pa.C.S.A. § 907(a), respectively.

surveillance in an unmarked vehicle at the intersection of Darien and Lycoming Streets to investigate illegal narcotics sales. He parked there for a few minutes and noticed [appellant] driving a silver Chrysler. [Appellant] parked the car across the intersection and was on the same side of the street as Officer Czapor. [Appellant] exited the car and walked into the property of 4100 Darien Street and remained inside for a few minutes. In the meantime, a silver Chevrolet Astro van, driven by Kenneth Cobbs, double parked in front of the property. [Appellant] came out, engaged in a conversation with Mr. Cobbs, and told him to park while he "come[s][2] out with it." [Appellant] again went inside the property while Mr. Cobbs parked. [Appellant] exited the property and walked towards Mr. Cobbs' vehicle with a clenched fist. He went to the passenger side's window and reached his entire arm inside that window. When [appellant] took out his arm, Officer Czapor observed United States Currency in [appellant's] hand, which he was counting while walking back towards the property. [Appellant] reentered the property and Mr. Cobbs drove away from the area. Officer Czapor, with six years of experience and who conducted thousands of narcotics [investigations], believed this to be a narcotics transaction. The back-up officers stopped Mr. Cobbs and recovered six packets of crack cocaine, which was [sic] tested positive. Meanwhile, [appellant] exited the property and went inside the Chrysler. Officer Czapor notified back-up officers, who stopped [appellant] and placed him under arrest.[Footnote 2]

> [Footnote 2] Money was recovered on the [appellant], which included nine $20 bills, ten $10 bills, five $5 bills, and seven $1 [bills], totaling up to be $312.

Officer Czapor, Sergeant [Wali] Shabazz, and Officer [John] Seigafuse proceeded to secure the property that the [appellant] was seen entering and

---

[2] Brackets in original.

leaving. When they arrived at the property, the door was unlocked. Officer Czapor testified that the first floor lights were on, while the second floor was completely dark. The officers went inside the house, located a male and female sleeping upstairs and brought them downstairs in order to secure the house. Officer Shabezz [sic] conducted a general safety frisk of the bedroom to ensure that there were no weapons. Officer Czapor testified that the officers did not search until they received consent. The officers only lifted up the cushions to check for weapons before they placed the male and female on the couch.

[Appellant's] mother, Vertell Whaley-Whiting, who was also the owner of the house, came home minutes later and gave verbal and written consent to the search. She was calm and cooperative about the search. Sergeant Shabezz [sic] explained to Ms. Whaley-Whiting about the consequences and other specific details with regards to the search, including her right not to consent. She made no objections nor asked any questions. Sergeant Shabezz [sic] recovered three handguns inside the dresser drawer in the dining room on the first floor[.Footnote 3] Officer Seigafuse recovered one clear baggie containing 48 packets of crack cocaine and a digital scale from a separate drawer of the same dresser.[Footnote 4]

> [Footnote 3] Counsels [sic] stipulated that the three operable handguns that were recovered and placed on property receipt included a black Rock Island .45 caliber loaded with four live round [sic], a black Smith & Wesson .357 loaded with six live rounds, and a silver and white small caliber handgun that was unloaded.

> [Footnote 4] Counsels [sic] stipulated that the drugs that was [sic] recovered and placed on property receipt were [sic]

tested positive for cocaine-based [sic] and marijuana.

Defense called two witnesses to testify. Aaron Cooper, [appellant's] sister's boyfriend, testified that he was upstairs with [appellant's] sister when the police arrived on that day in question. He testified that there were four officers present, but could not recall the description of the fourth officer. He recalled that all the lights, except for the second floor TV lights, were off. Mr. Cooper testified that he never saw the officers recover guns from the dining room, and that the only gun in the house was a small gun that he owned in the upstairs bedroom. Ms. Whaley-Whiting, [appellant's] mother and owner of the house, also testified. Both Ms. Whaley-Whiting and Mr. Cooper testified that the officers showed her the contrabands [sic] that they found from [sic] the dining room drawers when she came inside the house before she signed the consent form. She testified that she did not see the officers search for anything while she was present.

Trial court opinion, 11/23/15 at 2-4 (citations to notes of testimony omitted).

Appellant raises the following issue for our review:

WHETHER THE COURT ERRED IN FAILING TO GRANT THE MOTION TO SUPPRESS THE PHYSICAL EVIDENCE?

Appellant's brief at 4.

Our standard of review for challenges to the denial of a suppression motion is as follows:

[We are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression

court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783-784 (Pa.Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2013) (citations omitted).

Preliminarily, we note that appellant raises an argument in his brief that police lacked probable cause to arrest him because Officer Czapor's testimony regarding the observations he made outside of appellant's residence was insufficient to establish probable cause that a drug transaction occurred between appellant and Mr. Cobbs. Because appellant failed to raise this issue in his Pa.R.A.P. 1925(b) statement, he waives it on appeal. Pa.R.A.P. 1925(b)(4)(vii) (issues not included in the statement are waived).

Appellant next contends that the trial court erred in failing to suppress the physical evidence seized from 4100 Darien Street (the "Residence"). Appellant claims that the warrantless entry into the Residence was unconstitutional for lack of probable cause and exigent circumstances, and therefore, the homeowner's subsequent consent to search was tainted.

Consequently, appellant claims that all physical evidence seized should have been suppressed.

The Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect citizens against unreasonable searches and seizures. Both constitutions forbid police to enter a private home without a warrant absent probable cause and an exception to the warrant requirement, such as exigent circumstances or consent. **Commonwealth v. Johnson**, 68 A.3d 930, 935 (Pa.Super. 2013). Probable cause exists where "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." **Commonwealth v. Thompson**, 985 A.2d 928, 931 (Pa. 2009) (citation omitted). We need not discern whether the officer's belief was more likely correct than incorrect. **Id.** A probability of criminal activity, rather than a **prima facie** showing thereof, is sufficient. **Id.** To answer the question, we examine the totality of the circumstances. **Id.**

Here, the record reflects that Officer Czapor, a member of Philadelphia's 25th district narcotics team, was investigating illegal narcotics sales at the intersection of Lycoming and Darien Streets in Philadelphia at approximately 9:45 p.m. on May 16, 2014. (Notes of testimony, 4/27/15 at 6-7.) While surveilling that intersection in an unmarked parked police

vehicle, Officer Czapor witnessed appellant arrive at the location in a silver Chrysler. (*Id.* at 7-8.) After parking his vehicle, appellant went inside the Residence where he remained for a few minutes. (*Id.* at 8.) While inside, a Chevy Astro van operated and occupied by Kenneth Cobbs pulled up and parked outside the Residence. Appellant then exited the Residence and engaged in a conversation with Mr. Cobbs which Officer Czapor could not hear. Officer Czapor then observed appellant turn around and, while walking toward the Residence, turned back toward Cobbs' vehicle and yelled, "Park up. I'll come out with it." (*Id.* at 9.) Appellant then went into the Residence, and Cobbs moved his vehicle to the next block of Darien Street. Appellant remained in the Residence for a short time and then exited with a clenched right fist. Appellant walked to Cobbs' vehicle, reached his arm inside the open passenger's window, and put his right clenched fist inside. After a few seconds, appellant removed his fist, and he was holding currency. Appellant began to walk towards the Residence, and as he did, he fanned the money and began to count it. (*Id.* at 9-10.) Appellant re-entered the Residence, and Mr. Cobbs drove away. (*Id.* at 10.) The record further reflects that Officer Czapor relayed the description of Cobbs' vehicle to other officers who pursued Cobbs and then arrested him after finding alleged crack cocaine. (*Id.*)

As Officer Czapor continued his surveillance, he then observed appellant exit the Residence and get into the Chrysler that appellant had

parked earlier. (*Id.*) Officer Czapor called for backup, and appellant was arrested. (*Id.* at 11.) Officer Czapor, Sergeant Shabazz, and Officer Seigafuse then entered the Residence through an open and unlocked front white screen door for the purpose of securing the Residence. (*Id.* at 11, 36.)

Considering the totality of the circumstances, the record supports the trial court's conclusion that probable cause existed to warrant the reasonable belief that criminal activity was afoot inside the home; specifically, the possession and sale of illegal drugs.

We must next determine whether the record supports the trial court's finding that exigent circumstances existed to justify the warrantless entry.

> [V]arious factors need to be taken into account to assess the presence of exigent circumstances; for example: (1) the gravity of the offense; (2) whether the suspect is reasonably believed to be armed; (3) whether there is a clear showing of probable cause; (4) whether there is a strong reason to believe that the suspect is within the premises being entered; (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended; (6) whether the entry is peaceable; (7) the timing of the entry; (8) whether there is hot pursuit of a fleeing felon; (9) whether there is a likelihood that evidence will be destroyed if police take the time to obtain a warrant; and (10) whether there is a danger to police or other persons inside or outside of the dwelling to require immediate and swift action. In analyzing exigent circumstances, courts must balance the needs of law enforcement against the rights and liberties of private citizens.

***Johnson***, 68 A.3d at 937 (citation omitted).  The Commonwealth bears the burden of presenting clear and convincing evidence that the circumstances surrounding the opportunity to search were truly exigent and that the exigency was in no way attributable to the decision by the police to forego seeking a warrant.  ***Commonwealth v. Bostick***, 958 A.2d 543, 556-557 (Pa.Super. 2008) (citation omitted).  Moreover, all decisions made pursuant to the exigent circumstances exception must be made cautiously because it is an exception that by its nature can very easily swallow the rule unless applied in only restricted circumstances.  ***Id.*** at 557.

Here, as discussed above, based on Officer Czapor's observations, police had probable cause to believe that drugs were being sold out of the Residence.  Possessing and selling illegal drugs are serious offenses. Because police had already apprehended appellant prior to entering the Residence, however, they would have no reason to believe that appellant was inside and armed or that he would escape.  Additionally, nothing in the record demonstrates that a danger to police existed inside the Residence or that evidence would be destroyed if the police took the time to obtain a search warrant.  With respect to entry, there was no evidence that the police entered the Residence with force; rather, they entered through an unlocked door.  Additionally, their entry occurred at night when only the home's downstairs lights were on.  Finally, nothing in the record demonstrates that police had any reason to believe that there were individuals inside the

Residence. Therefore, we find that the record fails to support the trial court's finding that exigent circumstances existed to justify the warrantless entry. That, however, does not end our inquiry.

The record reflects that police did not search the Residence until appellant's mother, the homeowner who arrived at the Residence minutes after the police entered through the unlocked door, gave police oral and written consent to conduct the search. Therefore, although the warrantless entry was illegal for want of exigency, that unlawful police conduct did not lead to the discovery of the physical evidence that appellant sought to suppress. Rather, it was the homeowner's oral and written consent to search that lead to the discovery of the physical evidence. Appellant failed to establish that this consent was coerced. Accordingly, although the record fails to support the trial court's finding that exigent circumstances existed, the search was nevertheless constitutional because it commenced after police had probable cause to believe criminal activity was afoot and after police received the homeowner's oral and written consent to conduct the search.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary
Date: 1/18/2017

- 10 -