**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERTO RIVERA, | |
| Appellant | No. 1414 MDA 2016 |

Appeal from the Judgment of Sentence July 27, 2016
in the Court of Common Pleas of Lebanon County
Criminal Division at No.: CP-38-CR-0000424-2015

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                       **FILED JULY 31, 2017**

Appellant, Roberto Rivera, appeals from the judgment of sentence imposed by the trial court after his jury conviction of possession of a controlled substance, drug paraphernalia, and a small amount of marijuana.[1] Specifically, Appellant challenges the trial court's denial of his motion to suppress the morphine pills seized by the police.  We affirm.

We take the following facts from our independent review of the certified record.  On July 1, 2014, Officer David Zinda, Detective Lawrence Minnick, and Detective Ryan Mong, from the Lebanon County Police

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(16), (a)(32), and (a)(31), respectively.

Department, were dispatched to Appellant's residence based on a neighbor's complaint about illegal drug use. (*See* N.T. Hearing, 7/29/15, at 5, 22). Officer Zinda and Detective Minnick knocked on Appellant's door while Detective Mong went to the complainant's neighboring apartment. (*See id.* at 6, 22). Upon answering the door, Appellant appeared very happy to see Detective Minnick, whom he had known for years, and greeted him in a friendly manner, calling him "Papa." (*Id.* at 6, 23; *see id.* at 7). Detective Minnick explained why the officers were there and asked if they could have Appellant's consent to search the apartment. (*See id.* at 7, 23-24). Appellant invited the officers into his apartment, and gave them consent to search. (*See id.* at 7, 24).

Appellant, although permitted to walk around his apartment, remained in the living room speaking with Detective Minnick while Officer Zinda searched the bedroom. (*See id.*). The officer found a marijuana grinder in plain view on an end table and showed it to Appellant. (*See id.* at 8). In response, Appellant said, "[h]old on a minute[,]" retrieved a metal tin of marijuana from the kitchen, gave it to the officers, and asked them to stop their search. (*Id.*; *see id.* at 24-25). The search immediately ceased. (*See id.* at 8).

At that time, Detective Minnick advised Appellant that, based on what Officer Zinda already had found, the police had probable cause to apply for a search warrant. (*See id.* at 9, 25). Thereafter, of his own volition, and

without the urging of the officers in his home, Appellant called his friend of approximately twenty years, Sergeant Brett Hopkins,[2] on Hopkins' personal cell phone. (*See id.* at 25, 35). Sergeant Hopkins, who was on vacation in Cape May, New Jersey, at the time, did not have any personal knowledge of the situation in Appellant's apartment. (*See id.* at 35). When Appellant asked him what he should do, the sergeant told him to cooperate with the police. (*See id.*).

Thereafter, the officers presented Appellant with a consent to search form and asked him to read and review it. (*See id.* at 25, 30-31). Detective Minnick advised him that, if he had any questions, he should ask. (*See id.* at 31). Appellant did not give any indication that he could not read or understand the form. (*See id.* at 34). The detective explained that Appellant should sign the document if he was comfortable with what was on it, and he wished to consent to the search of his apartment. (*See id.* at 25, 31). Appellant signed the consent form, after which "he didn't say anything else adverse about [the police] searching [the apartment]." (*Id.* at 26; *see id.* at 10).

Shortly thereafter, while Officer Zinda resumed his search, Appellant complained he was very hot and experiencing respiratory issues. (*See id.* at 11, 26, 32). Detective Minnick observed that Appellant was not sweating or

---

[2] Sergeant Brett Hopkins is a member of the Lebanon County Drug Task Force. (*See* Trial Court Opinion, 10/03/16, at 4).

breathing hard, but he continued to offer to call an ambulance for approximately ten or fifteen minutes until Appellant agreed to medical attention. (*See id.* at 26, 32-33). After Detective Minnick called the ambulance, Appellant sat with him on the front steps to his apartment while they waited for it to arrive. (*Id.* at 33). After the ambulance picked up Appellant, Detective Minnick and Officer Zinda briefly remained at his apartment; during that time, Detective Minnick found several round pills that tested positive for morphine. (*See id.* at 11, 26-27).

The Commonwealth filed an information on March 23, 2015 charging Appellant with the previously identified crimes. On April 13, 2015, Appellant filed a motion to suppress the marijuana, drug paraphernalia, and pills the officers had seized from his apartment. At the conclusion of the pre-trial hearing, the court denied Appellant's motion to suppress the marijuana and paraphernalia, but requested briefs on the issue of "whether Sgt. Hopkins' 'advice' and/or [Appellant's] hospitalization[3] vitiated the written consent that prompted the second search by Det. Minnic[k] and Officer Zinda." (Trial Court Opinion, 10/03/16, at 3) (record citation omitted). On October 5,

_____

[3] There is no evidence in the certified record that Appellant was hospitalized after the ambulance took him from the scene. When the Commonwealth's counsel attempted to enter evidence of what occurred at the hospital, Appellant's counsel objected. (*See* N.T. Hearing, 7/29/15, at 12). In response, the assistant district attorney stated that "[T]hey called him an ambulance, and ultimately he never even received medical treatment. . . . [The police] received [information] that the ambulance arrived at the hospital and [Appellant] actually got out and ran away." (*Id.*).

2015, the trial court granted Appellant's motion to suppress the morphine pills, finding that his call to Sergeant Hopkins rendered his consent invalid. (*See id.* at 3-4).

On October 9, 2015, the Commonwealth filed a motion to reconsider based on the doctrine of inevitable discovery. On November 13, 2015, after argument, the trial court reversed its earlier decision and denied Appellant's motion to suppress the illegal pills.

Trial commenced on May 2, 2016. On May 6, 2016, the jury convicted Appellant of the previously mentioned crimes. On July 27, 2016, the trial court sentenced him to an aggregate term of six months' probation, "notwithstanding the fact that [his] standard sentencing range required incarceration." (*Id.* at 5). Appellant timely appealed.[4]

Appellant raises one issue for our review: "Did not the trial court err in denying Appellant's motion to suppress evidence where the facts and circumstances do not support a finding that the discovery of the evidence was inevitable?" (Appellant's Brief, at 4) (unnecessary capitalization omitted).[5]

---

[4] On September 20, 2016, Appellant filed a concise statement of errors complained of on appeal, pursuant to the court's order. The court filed an opinion on October 3, 2016. *See* Pa.R.A.P. 1925.

[5] Appellant's challenge only relates to the morphine pills, not the marijuana and drug paraphernalia. (*See* Appellant's Brief, at 8-9).

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

**Commonwealth v. McAdoo**, 46 A.3d 781, 783-84 (Pa. Super. 2012),

*appeal denied*, 65 A.3d 413 (Pa. 2013) (citation omitted).

It is well-settled that:

A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies. One such exception is consent, voluntarily given. The central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and, ultimately, the voluntariness of consent. Where the underlying encounter is found to be lawful, voluntariness becomes the exclusive focus.

**Commonwealth v. Kemp**, 961 A.2d 1247, 1260-61 (Pa. Super. 2008)

(citations omitted).

Pursuant to the inevitable discovery doctrine, "the fruits of an

unconstitutional search are admissible where the prosecution can establish

- 6 -

by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." ***Commonwealth v. Perel***, 107 A.3d 185, 194 (Pa. Super. 2014), *appeal denied*, 124 A.3d 309 (Pa. 2015) (internal quotation marks and citation omitted).

Here, the trial court denied Appellant's motion to suppress the morphine pills based on its finding that, although Appellant's phone call to Sergeant Hopkins and departure from the scene via ambulance rendered his consent invalid and the search unconstitutional, the items seized thereafter were admissible pursuant to the inevitable discovery doctrine. (***See*** Trial Ct. Op., at 8). The Commonwealth maintains that Appellant voluntarily consented to the search of his apartment, but that, even if he had not done so, the evidence inevitably would have been discovered. (***See*** Commonwealth's Brief, at 7, 9-13).

Therefore, because the language of the inevitable discovery doctrine requires a finding of an unconstitutional search before it will be applied, we will first consider the constitutionality of the search in this case.

> In connection with [the inquiry into the voluntariness of a consent given pursuant to a lawful encounter], the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. . . . [W]hile knowledge of the right to refuse to consent to the search is a factor to be taken into account, the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. . . . Additionally, although the inquiry is an objective one, the maturity, sophistication and mental or emotional state of the defendant (including age,

intelligence and capacity to exercise free will), are to be taken into account. . . .

*Kemp*, *supra* at 1261 (citation omitted).

In determining whether consent was voluntary, this Court considers the following pertinent factors:

1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) whether the person has been told that he is free to leave; and 9) whether the citizen has been informed that he is not required to consent to the search.

*Id.* (citation omitted).

Here, the only two officers in Appellant's home were Detective Minnick and Officer Zinda. Detective Minnick was familiar to Appellant, in plain clothes, with his gun concealed. There was no physical contact between the police and Appellant, and he was not restrained in any way. Appellant was allowed to make phone calls, and chose to call his friend Sergeant Hopkins on Hopkins' private cell phone, without any suggestion by Detective Minnick or Officer Zinda that he do so. Sergeant Hopkins was vacationing at the time, had no independent knowledge of what was occurring in Appellant's apartment, and was not involved in the investigation in any way. After a brief conversation, Appellant asked him what he should do, and Officer Hopkins merely told him to cooperate with the police. Thereafter, when Officer Minnick presented Appellant with the consent form, he explained it to

him, told him he could ask any questions, and only advised he sign it if he agreed with its terms.[6] Appellant had time to consider the information given to him by Detective Minnick and the advice of his friend, and then signed the form. After signing, he did not, at any point, challenge the search or withdraw his consent.

Further, only after signing the form did Appellant start complaining of physical symptoms that resulted in Detective Minnick calling an ambulance, although the officer did not observe any signs indicating that Appellant was not well. After the ambulance was called, Appellant did not tell the officers to stop searching or request they leave. He and Detective Minnick sat on the front steps of his apartment to wait for the ambulance while Officer Zinda continued to search inside, and at no time did Appellant question the search or request that it not continue in his absence. In fact, Officer Zinda's

_____

[6] Although the trial court observes that Sergeant Hopkins did not advise Appellant that he could refuse consent, we note first that he was not obligated to do so because he was not an investigating officer in this case or acting on the investigating officers' behalf. Additionally, even if he were required to so advise Appellant, this would not render the consent invalid. **See Commonwealth v. Cleckley**, 738 A.2d 427, 433 (Pa. 1999) ("[O]ne's knowledge of his or her right to refuse consent remains a factor to consider in determining the validity of consent; it simply is not a determinative factor since other evidence is oftentimes adequate to prove the voluntariness of a consent.") (footnote omitted); **see also Kemp**, **supra** at 1261 ("Appellant's permission was not the product of duress or coercion, but in fact was voluntarily given even though Appellant was not informed that he could refuse to consent to the search.") (citation omitted). Moreover, as noted above, Detective Minnick, an investigating officer, did advise Appellant that it was his choice whether or not to sign the consent to search form.

search had always been out of the presence of Appellant, who chose to remain in the living room, talking with Detective Minnick. Moreover, once the ambulance took Appellant from the scene, the search lasted for a brief time before the officers also left the apartment.

Based on the foregoing, and in the totality of the circumstances, we conclude that the Commonwealth met its burden of establishing that Appellant voluntarily consented to the search of his home where his consent was not the product of coercion or duress. *See Kemp*, *supra* at 1261. Additionally, Appellant subsequently leaving the scene by ambulance did not somehow extinguish his consent where the officers merely were conducting the investigation for which he already had consented. *See Commonwealth v. Witman*, 750 A.2d 327, 337 (Pa. Super. 2000), *appeal denied*, 764 A.2d 1053 (Pa. 2000), *cert. denied*, 534 U.S. 815 (2001) ("[W]here police are conducting a valid search pursuant to a defendant's [] consent, the initial investigation in its entirety is permissible. . . . [A]n investigation may require officials to remain on the scene for an extended period of time repeatedly entering or re-entering the building . . . [.]") (internal quotation marks and citation omitted).

Therefore, we are constrained to disagree with the trial court's finding that Appellant did not voluntarily consent to the search of his apartment. However, we conclude that the court properly denied his motion to suppress

the morphine pills, albeit on a different basis.[7] **_See McAdoo_**, **_supra_** at 783-84.  Appellant's issue lacks merit.[8]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/2017

---

[7] It is well-established "that we can affirm the trial court on any valid basis." **_Kemp_**, **_supra_** at 1254 n.3 (citation omitted).

[8] Because we affirm the trial court's denial of Appellant's motion to suppress on the basis that his consent was voluntary, we need not reach the question of whether the evidence would be admissible pursuant to the inevitable discovery doctrine.