J-S40006-17

2017 PA Super 264

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ASHANTEE SINGLETON, :
:
Appellant : No. 2384 EDA 2015

Appeal from the Judgment of Sentence July 17, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014083-2013

BEFORE: OTT, J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED AUGUST 17, 2017**

Appellant Ashantee Singleton appeals the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after Appellant pled guilty to possession with intent to deliver a controlled substance (PWID). Appellant argues that the trial court erred in denying his suppression motion. We affirm.

On September 19, 2013, at approximately 12:25 a.m., Philadelphia Police Officers Laseter and Corn were patrolling the area of 1500 Arott Street in Philadelphia, which is near a major train terminal and is known for a high level of narcotic activity. Officer Laseter was also aware that there had been several armed robberies in this area.

_____

[*] Former Justice specially assigned to the Superior Court.

While on patrol, the officers noticed Appellant, who was wearing a hooded sweatshirt, had his hand in the pocket and appeared to be carrying a heavy object in that pocket. Out of concern that Appellant had a weapon, the officers approached Appellant, who had sat down on a ledge. After Appellant observed the officers coming toward him, he pulled a black bag from his sweatshirt and placed it behind him. The bag appeared to contain a heavy object that the officers believed was a weapon.

When the officers asked Appellant about the contents of the bag, he gave no response and simply stared at them. Although Appellant refused to speak with the officers, Officer Laseter was able to look behind Appellant and see through the side of the bag that it contained jars with red syrup. Officer Laseter immediately recognized that the use of small, non-prescription jars was a common narcotics packaging of codeine syrup. The officers arrested Appellant for suspicion of PWID. Upon a search incident to arrest, the officers discovered Appellant was in possession of thirty-six bags of heroin and twenty-nine bags of marijuana.

After Appellant was charged with PWID, he filed a suppression motion, which the trial court subsequently denied. On February 19, 2015, Appellant entered a negotiated guilty plea in which he sought to reserve the right to challenge the trial court's denial of his suppression motion. The trial court accepted this conditional plea. On July 17, 2015, the trial court sentenced Appellant to 11½ to 23 months' incarceration to be followed by five years' probation. Appellant filed this timely appeal and complied with the trial

- 2 -

court's direction to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

In his appeal, Appellant claims the trial court erred in denying his suppression motion. As noted above, Appellant attempted to enter a conditional plea agreement in reserving the right to appeal the suppression order. However, it is well-established that "[a] plea of guilty constitutes a waiver of all nonjurisdictional defects and defenses" and "waives the right to challenge anything but the legality of [the] sentence and the validity of [the] plea." *Commonwealth v. Andrews*, 158 A.3d 1260, 1265 (Pa.Super. 2017) (quoting *Commonwealth v. Jones*, 593 Pa. 295, 929 A.2d 205, 212 (2007) (citation omitted)).

While our courts have not specifically addressed the validity of conditional plea agreements, our courts have proceeded to review the merits of issues specifically reserved in plea agreements. *See Commonwealth v. Cotto*, 562 Pa. 32, 753 A.2d 217 (2000) (providing review of the appellant's challenges to the constitutionality of the Juvenile Act, issues which the appellant sought to reserve the right to appeal in his plea agreement); *Commonwealth v. Zelasny*, 635 A.2d 630 (Pa.Super. 1993) (reaching the merits of the appellant's suppression challenge which he sought to preserve in a conditional plea agreement). *See also Commonwealth v. Terreforte*, 526 Pa. 448, 587 A.2d 309 (1991) (per curiam order) (remanding for the Superior Court to review the appellant's Rule 1100 claim after the appellant claimed that counsel was ineffective for informing him that he could reserve

this issue for appeal in his plea agreement); *Commonwealth v. Thomas*, 506 A.2d 420 (Pa.Super. 1986) (allowing the appellant to withdraw his *nolo contendere* plea due to his plea counsel's misconception that the appellant could condition his plea upon the reservation of his right to appeal the denial of his pretrial motions). Moreover, in this case, it does not appear that the Commonwealth objected to the propriety of this appeal.

As a result, we will reach the merits of Appellant's suppression issue, as the trial court accepted Appellant's conditional agreement reserving the right to appeal the denial of his suppression motion. When reviewing a trial court's denial of a suppression motion, our standard of review is as follows:

> our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [*Commonwealth v.*] *Woodard*, [634 Pa. 162,] 129 A.3d [480,] 498 [(2015)]. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. *Commonwealth v. Galvin*, 603 Pa. 625, 985 A.2d 783, 795 (2009). Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. [*Commonwealth v.*] *Poplawski*, [634 Pa. 517,] 130 A.3d [697,] 711 [(2015)]. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial. *In the Interest of L.J.*, 622 Pa. 126,79 A.3d 1073, 1085 (2013).

*Commonwealth v. Yandamuri*, ___Pa.___, 159 A.3d 503, 516 (2017).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from

unreasonable searches and seizures. ***Commonwealth v. Lyles***, 626 Pa. 343, 350, 97 A.3d 298, 302 (2014). Search and seizure jurisprudence defines three levels of interaction between citizens and police officers and requires different levels of justification based upon the nature of the interaction. ***Commonwealth v. Tam Thanh Nguyen***, 116 A.3d 657, 664 (Pa.Super. 2015).

> These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or 'custodial detention" must be supported by probable cause.

***Commonwealth v. Baldwin***, 147 A.3d 1200, 1202–1203 (Pa.Super. 2016) (citation omitted).

In analyzing whether an interaction has escalated from a mere encounter to an investigative detention, we conduct an objective examination of the totality of the circumstances using the following standard:

> The totality-of-the-circumstances test is ultimately centered on whether the suspect has in some way been restrained by physical force or show of coercive authority. [***Commonwealth v.***] ***Strickler***, [563 Pa. 47, 757 A.2d 884,] 890 [(2000)]. Under this test, no single factor controls the ultimate conclusion as to whether a seizure occurred—to guide the inquiry, the United States Supreme Court and this Court have employed an objective test entailing a determination of

whether a reasonable person would have felt free to leave or otherwise terminate the encounter. *Id.* at 890, n. 8 (citation omitted). "[W]hat constitutes a restraint on liberty prompting a person to conclude that he is not free to 'leave' will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs." *Michigan v. Chesternut,* 486 U.S. 567, 573–74, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988) (citations omitted).

*Lyles*, 626 Pa. at 350–51, 97 A.3d at 302–303.

Moreover, we emphasize that:

This Court and the United States Supreme Court have repeatedly held a seizure does not occur where officers merely approach a person in public and question the individual or request to see identification. *See Hiibel v. Sixth Judicial District Court of Nevada,* 542 U.S. 177, 185, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004) (quoting *INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)) (officer free to ask for identification without implicating Fourth Amendment, and requests for identification do not, by themselves, constitute seizures); *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (citation omitted) (even when officers lack suspicion, no Fourth Amendment violation where they merely approach individuals on street to question them or request identification); [*Commonwealth v. Au,* 615 Pa. 330, 42 A.3d 1002,] 1007–09 (citations omitted) (same); *Commonwealth v. Ickes,* 582 Pa. 561, 873 A.2d 698, 701–02 (2005) (citation omitted) (same). Officers may request identification or question an individual "so long as the officers do not convey a message that compliance with their requests is required." *Bostick,* at 437, 111 S.Ct. 2382. Although police may request a person's identification, such individual still maintains "'the right to ignore the police and go about his business.'" *See In re D.M.,* 566 Pa. 445, 781 A.2d 1161, 1164–65 (2001) (citations omitted) (quoting *Illinois v. Wardlow,* 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)).

*Lyles*, 626 Pa. at 351, 97 A.3d at 303.

Consistent with this precedent, we find the officers did not subject

Appellant to a seizure when they approached him in a public place and asked

him what was inside his bag. The interaction remained a mere encounter as the officers were free to ask Appellant questions without implicating the Fourth Amendment as long as they did not convey a message that Appellant was required to comply with their request. Our review of the instant case does not reveal any circumstances that showed the officers' request for information was accompanied by a mandate to comply, physical restraint, or any show of authority. The officers merely asked Appellant about the contents of his bag. We agree with the trial court's conclusion that the interaction remained a mere encounter upon their inquiry to Appellant.[1]

As previously noted, Officer Laseter was concerned that Appellant had a weapon because he had observed Appellant quickly remove a black bag containing a heavy object from his sweatshirt pocket and place it behind him as the officers approached. When the officers asked Appellant what was in

_____

[1] Appellant's argument that the interaction escalated from a mere encounter to an investigative detention was partially based on the subjective beliefs of the officers on whether Appellant was free to leave. We note that in conducting an objective review of the totality of the circumstances, an "officer's subjective beliefs are largely immaterial to the consideration of whether a reasonable person would feel free to leave absent some objective manifestation or demonstration of that belief during the encounter." *Commonwealth v. Lyles*, 54 A.3d 76, 83 (Pa.Super. 2012). *See also Commonwealth v. Sherwood*, 603 Pa. 92, 118, 982 A.2d 483, 499 (2009) (using an objective standard in reviewing the totality of the circumstances to determine whether the defendant was subjected to a custodial interrogation, giving "due consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the troopers or the person being seized").

his bag, Appellant silently stared at them with no response. The officers encountered Appellant in the middle of the night in a high crime area where several armed robberies had occurred.

Moreover, from her point of view, Officer Laseter was able to look behind Appellant and see the contents of the bag through an opening in the side of the bag. Officer Laseter testified that she could see small, non-prescription jars filled with red syrup, which she immediately recognized as a common narcotics packaging of codeine syrup. When directly asked about how exactly she investigated Appellant's bag, Officer Laseter testified that "it was behind him, so I looked at it and you could see, like, in the side. Like, as soon as I went to touch it, I could see the jars with the red syrup inside." N.T. 8/12/14, at 12. Based on this testimony, the trial court found that "Officer Laseter did not have to manipulate or open the bag to see inside." Trial Court Opinion, 8/3/16, at 5.

As this finding is supported by the record, we agree with the trial court's conclusion that the officers did not detain Appellant or frisk his bag in observing the suspected controlled substances in his bag. At that point, Appellant's possession of suspected narcotics gave the officers probable cause to arrest him and conduct a search incident to arrest which led to the lawful seizure of additional contraband.

Accordingly, we conclude that the trial court did not err in denying Appellant's suppression motion and affirm his judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/17/2017