J-A15030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PHILIP GEORGE LETENDRE | : | |
| | : | |
| Appellant | : | No. 85 MDA 2018 |

Appeal from the Judgment of Sentence December 14, 2017
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0000033-2017

BEFORE:  PANELLA, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.:                    **FILED JULY 02, 2018**

Philip George Letendre (Appellant) appeals from the judgment of sentence imposed following his convictions of driving under the influence of alcohol (DUI) – general impairment, DUI – highest rate of alcohol,[1] and a related summary offense.  We affirm.

The trial court summarized the relevant facts of this case as follows:

1.    Trooper Matthew Geiman has been a police officer with the Pennsylvania State Police for approximately two years.  He has received specialized training in DUI cases, including signs of alcohol and drug intoxication.

2.    On September 24, 2016, Trooper Geiman was working the 3-11 p.m. shift, in full uniform and a marked police vehicle.

3.    Trooper Geiman was dispatched to Route 97 and Heritage Drive, Mount Joy Township, Adams County, Pennsylvania, for a two vehicle accident.

---

[1] 75 Pa.C.S.A. § 3802(a)(1), (c).

4.     Trooper Geiman approached and made contact with [Appellant], one of the drivers involved in the accident. Trooper Geiman observed [that Appellant] had bloodshot, glassy eyes, and his pupils were dilated. He also noticed [Appellant] was lethargic and careful how he walked.

5.     [Appellant] performed the requested field sobriety tests (SFST's), but refused the portable breath test (PBT).

6.     Trooper Geiman placed [Appellant] under arrest and transported him to Gettysburg Hospital for a blood draw.

7.     While en route to the hospital, Trooper Geiman explained to [Appellant] why they were going to the hospital and requested he submit to a blood draw.

8.     Trooper Geiman removed [Appellant]'s handcuffs prior to walking into the hospital.

9.     While at the hospital, Trooper Geiman read [Appellant] the revised DL-26[B] form[,] which does not reference enhanced criminal penalties for a refusal to submit to a blood draw.[1]

10.     [Appellant] reviewed the revised DL-26[B] form provided to him. [Appellant] ultimately signed the revised DL-26[B] form and consented to the blood draw.

11.     Trooper Geiman did not threaten or force [Appellant] to consent to the blood draw. At no point did Trooper Geiman reference enhanced criminal penalties if [Appellant] refused to consent to the blood draw.

_____

[1] Trooper Geiman testified that the DL-26[B] form he read to [Appellant] was revised by PennDOT in the summer of 2016. The revised DL-26[B] form references a driver's license suspension upon refusal to "submit to a chemical test of the blood" but does not reference criminal penalties. *See* Pennsylvania Department of Transportation, Chemical Testing Warnings and Report of Refusal to Submit to a Blood Test as Authorized by Section 1547 of the Vehicle Code in Violation Section 3802 (relating to driving under the influence of Alcohol or Controlled Substance) (DL-26B) (6-16).

12.    [Appellant] has been a licensed Maryland attorney for seven years.  He does not practice in the area of criminal law.

13.    [Appellant] did not ask Trooper Geiman any questions about possible enhanced criminal penalties if he refused the blood test.

14.    Trooper Geiman testified [Appellant] was lethargic, took several seconds to think and provided slow, delayed responses that night.

15.    [Appellant]'s BAC was .336.

Suppression Court Opinion, 4/25/17, at 1-3.

On March 1, 2017, Appellant filed a pre-trial motion to suppress the evidence recovered from his blood draw, relying on the United States Supreme Court's decision in ***Birchfield v. North Dakota***, 136 S. Ct. 2160 (2016), which held that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." ***Id.*** at 2186.  Appellant argued that he was improperly coerced into consenting to the blood draw because he had independent knowledge of the criminal penalties associated with the refusal to submit to a blood draw under Section 3804(c) of the Vehicle Code, which was still in effect at the time of his arrest.  ***See*** 75 Pa.C.S.A. § 3804.  On March 27, 2017, the trial court held a hearing on Appellant's suppression motion, which the court denied on April 25, 2017.

On October 24, 2017, the trial court held a stipulated bench trial, after which it found Appellant guilty of the aforementioned offenses.  On December 14, 2017, the trial court sentenced Appellant to 24 months of intermediate punishment with 90 days in a restrictive setting.  This timely appeal followed.

On appeal, Appellant presents the following issue for review:

Whether Appellant's blood test results should have been suppressed as being coerced under the dictates of **Birchfield** when, even though Appellant was read an amended DL-26[B] form, the enhancement provisions of 75 Pa.C.S.[A.] § 3804 were still valid law, and Appellant had independent knowledge of the enhancement provisions of § 3804, and Appellant consented to a blood draw because of this independent knowledge.

Appellant's Brief at 5.

The standard of review is as follows:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. **Commonwealth v. Woodard**, [] 129 A.3d 480, 498 ([Pa.] 2015). We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. **Commonwealth v. Galvin**, [] 985 A.2d 783, 795 ([Pa.] 2009). Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. **Commonwealth v. Poplawski**, [] 130 A.3d 697, 711 ([Pa.] 2015). Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial. **In the Interest of L.J.**, [] 79 A.3d 1073, 1085 ([Pa.] 2013).

**Commonwealth v. Smith**, 177 A.3d 915, 918 (Pa. Super. 2017) (quoting

**Commonwealth v. Singleton**, 169 A.3d 79, 82 (Pa. Super. 2017))

"The Fourth Amendment to the [United States] Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures." **Commonwealth v. McAdoo**, 46 A.3d 781, 784 (Pa. Super. 2012). The "administration of a blood test ... performed

by an agent of, or at the direction of the government" constitutes a search under both the United States and Pennsylvania Constitutions. ***Commonwealth v. Kohl***, 615 A.2d 308, 315 (Pa. 1992). "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." ***Commonwealth v. Strickler***, 757 A.2d 884, 888 (Pa. 2000). "One such exception is consent, voluntarily given." ***Id.*** at 888-889.

> Our Supreme Court explained:
>
> While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

***Commonwealth v. Gillespie***, 821 A.2d 1221, 1225 (Pa. 2003) (Eakin, J., opinion announcing the judgment of the court) (citing ***Commonwealth v. Cleckley,*** 738 A.2d 427, 433 n.7 (1999)).

In ***Birchfield***, the United States Supreme Court addressed the constitutionality of warrantless blood draws. Although the Court concluded that warrantless blood draws are not permissible as searches incident to arrest, the Court determined that they are nonetheless permissible under the consent exception to the warrant requirement. ***Birchfield***, 136 S. Ct. at 2185-2186. The Court explained that its "prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil

penalties and evidentiary consequences on motorists who refuse to comply with BAC tests[.]" *Id.* at 2185.

The Court further stated, however, that it is "another matter ... for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test." *Id.* It reasoned that "[t]here must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." *Id.* Thus, the Court concluded that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2186.

Shortly following *Birchfield*, PennDOT revised the DL–26 form to remove the warnings that individuals suspected of DUI would face enhanced criminal penalties if they refused to submit to a blood test. *Commonwealth v. Robertson*, ___ A.3d ___, 2018 WL 2057000 at *2 (Pa. Super. May 3, 2018). Subsequently, this Court invalidated Section 3804(c), holding that Pennsylvania's implied-consent law unconstitutionally "impose[s] criminal penalties on the refusal to submit to" a blood test. *Commonwealth v. Evans*, 153 A.3d 323, 331 (Pa. Super. 2016). Thus, where a defendant consented to a blood draw after receiving Pennsylvania's pre-*Birchfield* implied consent warnings, the blood draw was unconstitutional because consent was elicited following warnings relating to the now-invalidated increased, mandatory penalty for failing to consent. *Id*.

In this case, although Appellant received the revised post-**Birchfield** DL-26B warnings, which do not reference the enhanced criminal penalties for refusing consent in Section 3804(c), he argues that his consent to the blood draw was coerced because, as a licensed attorney, he had independent knowledge that Section 3804(c) imposed enhanced criminal penalties for refusing to consent to a blood draw. In support of this argument, Appellant relies on the legal maxim that everyone is presumed to know the law and, in this case, he indeed was aware of the law. Appellant contends that we must take into consideration his knowledge of the enhanced penalties associated with the refusal to consent to a blood draw at the time of his arrest.

Appellant's argument is without merit. As this Court has explained, "**Birchfield** makes plain that the police may not **threaten** enhanced punishment for refusing a blood test in order to obtain consent, 136 S.Ct. at 2186; whether that enhanced punishment is (or can be) ultimately imposed is irrelevant to the question whether the consent was valid." **Commonwealth v. Ennels**, 167 A.3d 716, 724 (Pa. Super. 2017) (emphasis in original). Thus, pursuant to **Ennels**, the mere existence of a statutory provision that imposed enhanced criminal penalties for refusal, absent an actual threat, does not amount to coercion or invalidate consent. **Id.** Here, Appellant concedes that he was not threatened with enhanced criminal penalties prior to consenting to the blood test. **See** Appellant's Brief at 12. Accordingly, we are not persuaded

- 7 -

by Appellant's argument that his independent knowledge of the enhanced criminal penalties rendered his consent coerced.

Instead, we agree with the trial court's determination that Appellant's consent to the blood draw was knowing and voluntary:

> Despite the fact [Appellant] was in custody at the time he consented, there are a number of factors leaning towards a finding of knowing and voluntary consent. While [Appellant] was technically under arrest, [he] was not handcuffed when he walked into the hospital with Trooper Geiman nor was he handcuffed when he submitted to the blood test. Additionally, in response to [Appellant]'s request, Trooper Geiman allowed [Appellant] to use the bathroom before [he] consented to the blood test. No evidence was presented to show [Appellant] was argumentative, belligerent, or uncooperative after his arrest. [Appellant]'s consent to the blood draw was not the product of duress, threats, or coercion on the part of law enforcement. Trooper Geiman did not use excessive police force nor did he promise [Appellant] anything in exchange for submitting to the blood draw. No testimony was presented that Trooper Geiman's demeanor or expression was harsh or confrontational, or that he misrepresented the facts in an effort to get [Appellant] to consent to the blood draw. Trooper Geiman read [Appellant] the revised DL-26[B] form and allowed [him] to read the revised DL-26[B] form before he requested [his] consent to the blood draw. The revised DL-26[B] warning clearly indicate[d] the blood draw was merely a request, to which [Appellant] was free to refuse.

> Upon consideration of the totality of all the factors present in this case, this Court is of the opinion that the Commonwealth has met its burden of establishing that [Appellant]'s consent was the product of an essentially free and unconstrained choice, objectively valid and not the product of police coercion, deceit or misrepresentation.

Suppression Court Opinion, 4/25/17, at 9-11 (quotations and footnotes omitted); *see also Cleckley*, 738 A.2d at 433.

Based on our review of the certified record, including the notes of testimony from the suppression hearing, we conclude that the record supports the trial court's determination that Appellant's consent to the blood draw was knowing and voluntary. *See* N.T., 3/27/17, at 2-17. Accordingly, the trial court did not err in denying Appellant's suppression motion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/2/18