J-A28001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER L. PIERCE | : | |
| | : | |
| Appellant | : | No. 1839 MDA 2017 |

Appeal from the Judgment of Sentence October 18, 2017
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0004543-2016

BEFORE:  LAZARUS, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                **FILED DECEMBER 17, 2018**

Christopher L. Pierce appeals from the judgment of sentence, entered in the Court of Common Pleas of Dauphin County, following his conviction of two counts of firearms not to be carried without a license[1] and one count of possession of a firearm with altered manufacturer's number.[2]  Pierce challenges the trial court's order denying his motion to suppress as well as the sufficiency of the evidence supporting his convictions.  After our review, we affirm.

On June 22, 2016, at approximately 4:30 a.m., police were called to the America's Best Value Inn (the Inn) on Front Street in Harrisburg.  Sergeant Rich Adams testified that he and two other officers responded to a dispatch

_____

[1] 18 Pa.C.S.A. § 6106(a)(1).

[2] 18 Pa.C.S.A. § 6110.2(a).

that two light-skinned Hispanic men and two black men, one possibly armed, were acting suspiciously at the Inn, which he described as a "high-crime location," with a high incidence of firearms violations, drug transactions, prostitution, thefts and assaults.   N.T. Suppression Hearing, 11/21/16, at 6-11.   Sergeant Adams and another officer proceeded to the rear of the Inn. Sergeant Adams testified that "legitimate guests" parked in the front of the hotel, while those who parked in the rear of the Inn are "normally up to no good." *Id*. at 12.

In the rear parking lot, Sergeant Adams and Officer Lindsay spoke to a female in the passenger seat of a silver Volkswagen Passat; she stated she was waiting for two friends. *Id.* at 15-18.  As Pierce walked down the steps at the rear of the Inn, the female identified him as one of the two friends she was waiting for.  *Id*.  Sergeant Adams testified that Pierce made eye contact with him and immediately turned around and walked toward Front Street.  *Id.* at 15-20.  Sergeant Adams became suspicious at this point; he testified that he followed Pierce and asked if he could talk to him, that Pierce "was very nervous[,]" and when asked, stated that he did not know the female in the car. *Id.* at 22-23, 39.  Sergeant Adams then asked Pierce for identification; at that point Pierce responded that "he knew his Fifth Amendment rights and didn't have to tell me anything[,]" and "he took off running." *Id.* at 23.

Sergeant Adams pursued Pierce, noticing that Pierce was "hunched over" as he ran, which indicated to him "either, one, he was trying to grab something or, number two, he was trying to hold his pants up[.]" *Id.* at 43.

Sergeant Adams lost sight of Pierce briefly, and he radioed Officer Julian Gomez, who intercepted Pierce. *Id.* at 25. At that point, Pierce voluntarily gave himself up. A search of Pierce's person revealed nothing. A search of the "flight path," by Officer Kelly English and K-9 Riggs, revealed a Ruger 9 millimeter firearm in an arborvitae bush. *Id.* at 26-27. Officer English testified that the track was based upon human odor, that the dog "is finding an odor of something that was freshly touched, freshly discarded that has human odor on it – sweat, skin, things that are perishable, things that don't last days on end." *Id.* at 42-53.

Pierce filed a motion to suppress the firearm, which was denied. Following a two-day jury trial, Pierce was convicted of all charges. The court sentenced him to an aggregate term of imprisonment of 60 to 120 months. Pierce filed post-sentence motions, which were denied, and this appeal followed. Both Pierce and the trial court have complied with Pa.R.A.P. 1925. Pierce raises the following issues for our review:

1. Did the court err in denying [Pierce's] motion to suppress when the police effected a seizure of [his] person without reasonable suspicion and when his subsequent flight and discarding of evidence is deemed not to constitute an abandonment under Article 1, section 8 of the Pennsylvania Constitution?

2. Was the evidence insufficient to sustain a conviction for three related counts of possessing a firearm under the Uniform Firearms Act when [Pierce] was not found in possession of a firearm and there was insufficient circumstantial evidence that he was in possession of a firearm?

Appellant's Brief, at 5.

- 3 -

Since a sufficiency claim warrants automatic discharge rather than retrial, we address Pierce's second issue at the outset. In reviewing a challenge to the sufficiency of the evidence, our standard of review is well settled:

> [W]e must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all the elements of the offense. Additionally, to sustain a conviction, the facts and circumstances which the Commonwealth must prove, must be such that every essential element of the crime is established beyond a reasonable doubt. Admittedly, guilt must be based on facts and conditions proved, and not on suspicion or surmise. Entirely circumstantial evidence is sufficient so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Any doubts regarding a defendant's guilt may be resolved by the fact finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The fact finder is free to believe all, part, or none of the evidence presented at trial.

*Commonwealth v. Cline*, 177 A.3d 922, 925 (Pa. Super. 2017) (citations omitted).

The three offenses of which Pierce was convicted each contain the element of possession of a firearm. *See* 18 Pa.C.S.A. § 6106(a)(1) (firearms not to be carried without a license); 18 Pa.C.S.A. § 6110.2(a) (possession of a firearm with altered manufacturer's number). Pierce argues that the police "did not visually observe [him] discard the firearm in the location where the police found it[,]" and, thus, the Commonwealth failed to prove possession. We disagree.

When a prohibited item is not discovered on a defendant's person, or in his actual possession, as is the case here, the Commonwealth may prove the defendant had constructive possession of the item. *See Commonwealth v. Harvard*, 64 A.3d 690, 699-700 (Pa. Super. 2013). To prove constructive possession the Commonwealth must show that the "defendant had both the ability to consciously exercise control over it as well as the intent to exercise such control." *Id.* at 699 (quoting *Commonwealth v. Gutierrez*, 969 A.2d 584, 590 (Pa. Super. 2009)). Further, constructive possession can be proven by circumstantial evidence. *Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996). The "requisite knowledge and intent may be inferred from examination of the totality of the circumstances." *Commonwealth v. Thompson*, 779 A.2d 1195, 1199 (Pa. Super. 2001).

Here, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that there was sufficient circumstantial evidence to support the jury's finding that Pierce constructively possessed the firearm. The anonymous tip that one of the four men might be armed, Sergeant Adams' testimony of Pierce's nervousness, Pierce's flight from a high-crime area, as well as his posture while running, and the K-9 tracking of the firearm in Pierce's "flight path," constituted sufficient circumstantial evidence to allow the jury to infer constructive possession of the firearm. *See Cline*, *supra*. *See also Commonwealth v. Hopkins*, 67 A.3d 817, 820–21 (Pa. Super. 2013) (viewed in their totality, facts and

- 5 -

circumstances supported finding that appellant constructively possessed contraband and weapon).

Next, Pierce challenges the court's order denying his motion to suppress the firearm. He argues Sergeant Adams did not have reasonable suspicion of criminal activity to initiate an investigative detention. We disagree.

Our standard of review of this matter is well-settled.

> [O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

***Commonwealth v. Singleton***, 169 A.3d 79, 82 (Pa. Super. 2017), a*ppeal denied*, 181 A.3d 1080 (Pa. 2018) (citations omitted). "Moreover as factfinder, it is within the suppression court's sole province to pass on the credibility of witnesses and the weight to be accorded their testimony. The factfinder is free to believe all, some, or none of the evidence presented." ***Commonwealth v. Griffin***, 785 A.2d 501, 505 (Pa. Super. 2001) (citations omitted).

> Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police. The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond.

> The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Ellis*, 662 A.2d 1043, 1047 (Pa. 1995) (citations omitted).

The fundamental inquiry of a reviewing court must be an objective one, namely, "whether the facts available to the officer at the moment of the stop warrant a man of reasonable caution in the belief that the action taken was appropriate." *Commonwealth v. Basinger*, 982 A.2d 121, 125 (Pa. Super. 2009). Further, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "[e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer.'" *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa. 1999).

Among the factors to be considered in forming a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight. *See Commonwealth v. Freeman*, 757 A.2d 903, 908 (Pa. 2000) ("nervous, evasive behavior such as flight is a pertinent factor in determining reasonable suspicion"); *Commonwealth v. Zhahir*, 751 A.2d at 1157 (stating that expectation of criminal activity in given area and nervous or evasive behavior are factors, and suspicious conduct may corroborate anonymous tip); *Commonwealth v. Pizarro*, 723 A.2d 675, 680

(Pa. Super. 1998) (finding that flight and presence in heavy drug-trafficking areas are factors).

The case of **In re: D.M**., 781 A.2d 1161 (Pa. 2001), is instructive. There, police received an anonymous tip that a person had a gun. The caller described the individual's clothing and his location on a corner in North Philadelphia, known as a high-crime area. D.M., who met the caller's description, fled when the officer approached. The Pennsylvania Supreme Court found that police had reasonable suspicion to stop D.M, stating:

> [A]t the time police initially approached [D.M.] it was unclear whether the police intended to do anything other than talk to him. Thus, the initial approach did not need to be justified by any level of suspicion. *Rather, the appropriate time to consider whether the police had reasonable suspicion is at the time the police actually effectuated the seizure of the appellant and the totality of the circumstances test, by its very definition, requires that the whole picture be considered when determining whether the police possessed the requisite cause to stop [D.M.]. Here, the police effectuated the stop following [D.M.'s] flight from the scene, thus, flight was clearly relevant in determining whether the police demonstrated reasonable suspicion* to justify a **Terry**[3] stop under the totality of the circumstances.

*Id.* at 1165 (emphasis added). The Court stated that D.M.'s flight, "coupled with the anonymous caller's information[,] was sufficient to arouse the officer's suspicion that criminal activity was afoot at the time he stopped [D.M.]" *Id.* at 1165. The Court held that under those circumstances, unprovoked flight in a high-crime area is sufficient to create reasonable suspicion to justify a stop. *Id.* at 1164.

---

[3] **Terry v. Ohio**, 392 U.S. 1 (1968).

Similarly, here, looking at the totality of the circumstances, Pierce's unprovoked flight in a high-crime area was sufficient to support reasonable suspicion. The anonymous tip of four suspicious men in a high-crime area at 4:30 a.m., coupled with the fact that Pierce "made a 180-degree turn" after making eye contact with Sergeant Adams, after the female had identified Pierce as one of the friends she was waiting for, was sufficient to arouse Sergeant Adams' suspicion that criminal activity was afoot. The suppression court explained,

> When asked what raised his suspicions about [Pierce] as an officer with nineteen years of experience, Sergeant Adams responded: that he was walking down the steps, most likely to come to the car, and then turned; that he turned away to avoid the officers; that the officers had already received information that there was a possible armed person in that vicinity; that it was 4:30 in the morning; and it happened in a very high-crime area. . . . After Sergeant Adams asked what [Pierce] was doing and requested identification, [Pierce] took off running. At this point, [Pierce's] unprovoked flight, coupled with his presence in a high-crime area and anonymous tip, gave [Sergeant Adams] reasonable suspicion to believe criminality was afoot so as to justify an investigative detention. . . . Nervous behavior is also a factor [and] on redirect, Sergeant Adams testified that when Defendant took off, he was running with his hands down around his waist, hunched over, which indicated that was either trying to grab something or hold his pants up.

Trial Court Opinion, 3/7/18, at 5-7.

We conclude that the record supports the suppression court's findings and those facts, viewed together, warranted Sergeant Adams' reasonable belief that further investigation was necessary. **D.M.**, **supra**; **Cook**, **supra**. Accordingly, the court properly denied Pierce's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/17/2018