J-A16023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
v. :
:
:
:
DINA ANN SANDOR :
:
Appellant : No. 1105 WDA 2023

Appeal from the Judgment of Sentence Entered September 13, 2023
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0004043-2020

BEFORE: KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY MURRAY, J.: **FILED: July 31, 2024**

Dina Ann Sandor (Appellant) appeals from the judgment of sentence imposed after she pled guilty to one count each of driving under the influence (DUI) of a controlled substance, and DUI—controlled substance (impaired ability).[1] Appellant challenges the trial court's denial of her pre-trial motion to suppress evidence (suppression motion). We affirm.

The trial court detailed the evidence adduced at the hearing on the suppression motion (suppression hearing):

[] Officer Zachary Burger of the City of Jeannette Police Department testified that he has been a municipal police officer for four years, he is familiar with the Motor Vehicle Code [(MVC)] and the violations thereof, and he has made close to one hundred DUI arrests throughout his career. [N.T., 12/12/22,] at 9-10. Officer Burger stated that on August 5, 2020, at approximately 9:00 p.m., while on routine patrol in an unmarked patrol unit, he observed a Pontiac sedan make a wide[-]radius right hand turn

---

[1] *See* 75 Pa.C.S.A. §§ 3802(d)(1), (d)(2).

onto a two-lane roadway[,] without using a proper turn signal[,] and then accelerate at a high rate of speed. *Id.* at 10-11. He estimated the vehicle's speed at 50 mph in a 25-mph speed zone. *Id.* at 11. According to Officer Burger, in his experience, "a wide radius turn is commonly associated with a DUI of driving [*sic*]." *Id.* Officer Burger confirmed that if there [had been] a car in the [other] lane [of travel when Appellant turned], there was a possibility that [she] could have struck the other vehicle. *Id.* He further confirmed on cross-examination that [Appellant] "went completely in the other lane[,] as if she was driving a tractor trailer truck." *Id.* at 17. Officer Burger activated his lights and siren and performed a traffic stop. *Id.* at 12.

After identifying the driver of the vehicle as [Appellant], Officer Burger informed her of the basis for the stop and requested her driver's license, registration, and proof of insurance. *Id.* Officer Burger observed [Appellant] begin fumbling for her paperwork, and [Appellant] asked him several times what he was asking for. *Id.* He had to repeat himself several times. *Id.* Officer Burger testified that [Appellant] could not focus on one certain thing that he was asking for, and [her attention] was all over the place. *Id.* at 23. He testified that this is one of the indicators of a DUI. *Id.* Officer Burger also observed [Appellant] to have mumbled speech and a dry mouth. *Id.* at 13. According to Officer Burger, [Appellant] started talking about work and other things and she appeared to be ignoring his questions. *Id.* Officer Burger testified that at one point, [Appellant] grabbed her driver's license that was sitting on her lap, and when Officer Burger told her to hand him her license, she continued to fumble for her paperwork. *Id.* According to Officer Burger, [Appellant] could not sit still during the initial traffic stop, and she moved all around. *Id.* at 13-14.

When Officer Burger inquired where [Appellant] was coming from, she allegedly indicated "Kevin's house on Harrison Avenue." *Id.* at 13. According to Officer Burger, [Appellant] indicated that she was getting paperwork for a[ vehicle] inspection that Kevin completed for her, but she could not provide any paperwork. *Id.* Officer Burger testified that [Appellant's] story at that point did not make sense. *Id.* Before requesting [Appellant] to perform field sobriety tests, Officer Burger requested her consent to search her vehicle. *Id.* at 14. Officer Burger was the only officer on scene. *Id.* at 20. [Appellant] consented to the search. *Id.* at 14. Upon searching the vehicle, no drugs or other illegal substances

were found. *Id.* at 15. Immediately after searching [Appellant's] vehicle, Officer Burger noticed [Appellant] fumbling with her socks and asked her to remove her socks and turn them inside out[,] to which [Appellant] complied. *Id.* at 20-21. No illegal substances were found in [Appellant's] socks. *Id.* at 21. Once Officer Burger returned to his patrol car, he inquired with County 911 to check if [Appellant] had a criminal history of narcotics[-related convictions], which she did. *Id.* at 15. Based upon his observations, Officer Burger concluded that [Appellant] might be under the influence of a narcotic, and he opined that she was not able to safely operate a motor vehicle. *Id.* at 14, 16. After searching [Appellant's] vehicle and her socks, the officer performed standardized field sobriety tests on [Appellant]. *Id.* at 16, 22-23. [After Appellant performed poorly on the tests, Officer Burger placed her under arrest. *Id.* at 16, 23.]

[Appellant] also elected to testify during the [suppression h]earing. [Appellant] testified that she was pulled over during the mid-afternoon on the date of the incident[,] and she indicated that the officer "never said anything, but you were going a little fast up that hill." *Id.* at 26. [Appellant] described herself as being emotion[al] at that time[, as she had recently] learn[ed] that her significant other of four years had just passed away, and she claimed that during her encounter with Officer Burger, he "harassed me horribly." *Id.* at 26-27. [Appellant] further stated that she "didn't do anything" and that she had a perfect driving record. *Id.* at 26. When asked whether her mouth was dry during the traffic stop, [Appellant] testified that her mouth is always dry because she has sinus issues. *Id.* at 30. [Appellant] consented to the search of her vehicle and her person. *Id.* at 28, 30. On cross-examination, [Appellant] confirmed that she was convicted of going 55 mph in a 45 mph zone less than a month before this incident, and a certified PennD[OT] record admitted as Commonwealth's Exhibit 1 confirmed that [Appellant] also was convicted on April 12, 2022[,] for traveling 53 mph in a 25 mph zone. *Id.* at 32. When questioned about this specific incident, [Appellant] estimated [she had been] traveling 30 miles [per] hour in a 25-mph zone. *Id.* at 35.

Trial Court Opinion, 11/8/23, at 3-5 (footnote and italics omitted; citations modified).

In September 2020, the Commonwealth charged Appellant with two counts of DUI, as well as the summary offenses of turning movements and required signals, 75 Pa.C.S.A. § 3334(a), and driving vehicle at safe speed, *id.* § 3361 (collectively, the traffic offenses). Appellant filed her suppression motion on February 4, 2022, claiming, *inter alia*, Officer Burger unlawfully detained her "beyond the time necessary to conduct the traffic stop. The Officer did not have reasonable suspicion to prolong the stop." Suppression Motion, 2/4/22, ¶ 32.

The suppression hearing occurred on December 12, 2022.[2] Appellant and Officer Burger were the only witnesses. At the conclusion of the suppression hearing, the trial court considered defense counsel's argument:

> I'm not contesting the initial legality of the stop. What I'm contesting is once [Officer Burger] pulled [Appellant] over[,] he should have given her a ticket and let her go because **there wasn't reasonable suspicion to prolong the stop**. A dry mouth and mumbling isn't enough to suspect narcotic use and search the car. [Officer Burger] still had [Appellant's] paperwork. She was not free to leave.

N.T., 12/12/22, at 39 (emphasis added); *see also id.* at 40 (defense counsel arguing that police "authority for the seizure ends when tasks tied to the traffic infraction are or reasonably should have been completed.").

_____

[2] The trial court previously scheduled the hearing to occur in May 2022, but Appellant failed to appear. The trial court issued a bench warrant for her arrest.

J-A16023-24

At the close of the suppression hearing, the trial court denied Appellant's suppression motion. The court concluded the "totality of the circumstances" established Officer Burger possessed reasonable suspicion of criminal activity, and he did not unlawfully prolong Appellant's detention. *Id.* at 43-44. Appellant filed a motion for reconsideration, which the trial court denied on December 22, 2022.

On September 13, 2023, Appellant pled guilty to two counts of DUI.[3] The trial court immediately imposed an aggregate sentence of 72 hours to six months in jail, plus fines, court costs, and fees. The sentencing order stated, *inter alia*:

> Stipulated to guilty plea[.] [**Appellant**] **preserves the right to appeal the denial of the underlying** [**suppression**] **motion**[.] If [the suppression] ruling is affirmed on appeal[, Appellant's] sentence will immediately take effect.

Order, 9/13/23, at 1-2 (emphasis added); *see also id.* at 1 ("this sentence is deferred pending appeal").[4]

_____

[3] The trial court dismissed the traffic offenses.

[4] "Generally, a plea of guilty amounts to a waiver of all defects and defenses except those concerning the jurisdiction of the court, the legality of the sentence, and the validity of the guilty plea." *Commonwealth v. Morrison*, 173 A.3d 286, 290 (Pa. Super. 2017) (citation omitted). However, "so long as the limits of the [plea] agreement are plainly set forth on the record, understood and agreed to by the parties, and approved by the trial court, there is no impediment to the offer, acceptance, performance, or enforcement" of plea agreements, where "the parties agreed to preserve [a defendant's] appellate rights regarding [a] motion to suppress." *Commonwealth v. Alamo*, 245 A.3d 1088 (Pa. Super. 2020) (unpublished
*(Footnote Continued Next Page)*

- 5 -

This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925. Appellant presents a single issue for review:

Whether the trial court erred by denying [the suppression motion,] when the Appellant's vehicle was stopped for traffic violations and the vehicle stop was prolonged beyond what was necessary to effectuate the traffic stop, when there was no reasonable suspicion that criminal activity was afoot and no reasonable suspicion to conduct field sobriety tests[?]

Appellant's Brief at 2 (capitalization modified).

"Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Dewald*, \_\_\_ A.3d \_\_\_, 2024 PA Super 109, *11 (Pa. Super. filed May 30, 2024) (citation and brackets omitted). "We are bound by the facts found by the [suppression] court so long as they are supported by the record, but we review its legal conclusions *de novo*." *Commonwealth v. Rivera*, \_\_\_ A.3d \_\_\_, 2024 PA Super 104, *7 (Pa. Super. filed May 22, 2024). "Our scope of review from a

---

memorandum at 3, n.6) (quoting *Commonwealth v. Parsons*, 969 A.2d 1259, 1267 (Pa. Super. 2009) (*en banc*) (citations omitted)); *see also* Pa.R.A.P. 126(b) (providing unpublished non-precedential memorandum decisions of the Pennsylvania Superior Court filed after May 1, 2019 may be cited for their persuasive value). Additionally, we have stated, "While our courts have not specifically addressed the validity of conditional plea agreements, our courts have proceeded to review the merits of issues specifically reserved in plea agreements." *Commonwealth v. Singleton*, 169 A.3d 79, 81 (Pa. Super. 2017) (collecting cases). Finally, the Commonwealth has not objected to the propriety of this appeal. *See id.* at 82.

suppression ruling is limited to the evidentiary record that was created at the suppression hearing." ***Commonwealth v. Tillery***, 249 A.3d 278, 281 (Pa. Super. 2021) (citations omitted).

"Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted." ***Commonwealth v. Yandamuri***, 159 A.3d 503, 516 (Pa. 2017) (citation omitted). "[I]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Ochoa***, 304 A.3d 390, 396 (Pa. Super. 2023) (citation and brackets omitted). "The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v. Byrd***, 185 A.3d 1015, 1019 (Pa. Super. 2018) (citation omitted).

Instantly, Appellant claims that after the initial traffic stop,[5] Officer Burger lacked reasonable suspicion of criminal activity and unlawfully prolonged her detention; thus, the trial court erred in denying the suppression motion. ***See*** Appellant's Brief at 7-14. Appellant argues

> Officer Burger prolonged the stop beyond the time necessary to address the traffic violation. **He extended the stop based on a mere hunch that** [**Appellant**] **may be intoxicated**. He

---

[5] Appellant concedes Officer Burger lawfully stopped her vehicle based on the traffic violations. ***See*** Appellant's Brief at 7, 10, 13; ***see also*** N.T., 12/12/22, at 39.

searched [Appellant's] car with negative results. He instructed her where to sit while he searched her car and kept her documentation, as well. Clearly, she was not free to leave.

*Id.* at 8 (emphasis added); *see also id.* at 12 ("Officer Burger prolonged the stop repeatedly so that he could find a reason to detain and arrest" Appellant).

According to Appellant, her

dry mouth and alleged fumbling for paperwork does not indicate that [she] was driving under the influence, especially in the absence of glassy eyes and odors emanating from the vehicle.

*Id.* at 8.

Appellant contends,

it is well settled that an officer may not extend a traffic stop beyond the purposes of enforcing a traffic violation, there must be reasonable suspicion that a defendant "may have been engaged in criminal activity independent of" the traffic violation. [] *Commonwealth v. Benitez*, 218 A.3d 460, 471 (Pa. Super. 2019) [(citation omitted)]. Here, there was none.

*Id.* at 14.

The Commonwealth counters the trial court properly denied Appellant's suppression motion, where Officer Burger, during the lawful traffic stop,

had probable cause[6] to suspect that criminal activity was afoot[,] given the manner of how Appellant was responding to police directives and questions[,] as well as how she was acting physically during the encounter.

Commonwealth Brief at 2 (footnote added).

_____

[6] The probable cause standard carries a higher burden of proof than the reasonable suspicion standard. *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa. 1999).

According to the Commonwealth,

Appellant complains that her actions of fumbling with paperwork and having a dry mouth was the only basis the officer had to make any conclusions as to whether or not she was capable of driving safely.  **Appellant conveniently overlooks other factors the officer utilized**[,] such as the fact Appellant was disoriented and unable to remember what documents the officer was asking for[,] and that she repeatedly asked the officer what i[t] was that he wanted[]; or that her driver's license was on her lap in plain view of the officer as she kept looking for it.

*Id.* at 7 (emphasis added; record citations omitted).  Appellant also overlooks

that the very reason for the [traffic] stop — Appellant making a wide radius turn — indicated to [Officer Burger,] based on his training and experience[,] that the driver was driving under the influence of alcohol or a controlled substance.

*Id.* (record citation omitted).  The Commonwealth argues, "[g]iven the totality of the circumstances, and based upon Officer Burger's personal observations, training, and experience," he "was justified in extending the stop and further investigating" his reasonable suspicion that Appellant was intoxicated by drugs.  *Id.* at 8.

It is well settled that

[a] police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct.  This standard, less stringent than probable cause, is commonly known as reasonable suspicion.

*Commonwealth v. Galloway*, 265 A.3d 810, 814-15 (Pa. Super. 2021) (quoting *Commonwealth v. Rogers*, 849 A.2d 1185, 1189 (Pa. 2004)); *see also* 75 Pa.C.S.A. § 6308(b) (authorizing police to conduct a vehicle stop, where they have reasonable suspicion to suspect a violation of the MVC).

In order to determine whether the police had reasonable suspicion, the totality of the circumstances—the whole picture—must be considered. Based upon that whole picture[,] the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.

*Commonwealth v. Simmons*, 17 A.3d 399, 403 (Pa. Super. 2011) (internal citations and quotation marks omitted).

The Pennsylvania Supreme Court has instructed,

[i]n determining whether the officer acted reasonably[,] due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Commonwealth v. Jackson*, 302 A.3d 737, 741 (Pa. 2023) (citations and ellipses omitted); *see also Commonwealth v. Holmes*, 14 A.3d 89, 95 (Pa. 2011) ("In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention." (citations omitted)).

In *Rodriguez v. United States*, 575 U.S. 348 (2015), the United States Supreme Court addressed the permissible scope of a police officer's investigation during a traffic stop. The Supreme Court stated:

A seizure for a traffic violation justifies a police investigation of that violation. A relatively brief encounter, a routine traffic stop is more analogous to a so-called *Terry* [*v. Ohio*, 392 U.S. 1 (1968),] stop than to a formal arrest. Like a *Terry* stop, **the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission** — to address

- 10 -

the traffic violation that warranted the stop and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate th[at] purpose. Authority for the seizure thus ends when tasks tied to the traffic infraction are — or reasonably should have been — completed.

*Id.* at 354 (emphasis added; internal citations, quotation marks, ellipses, and brackets omitted); *see also Commonwealth v. Malloy*, 257 A.3d 142, 149-50 (Pa. Super. 2021) (discussing *Rodriguez*).

The *Rodriguez* Court elaborated that a traffic stop

can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a warning ticket. … An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But … he may not do so in a way that prolongs the stop, **absent the reasonable suspicion ordinarily demanded to justify detaining an individual**.

*Rodriguez*, 575 U.S. at 354-55 (emphasis added; internal citations, quotation marks, and brackets omitted); *see also Galloway*, 265 A.3d at 815 (pursuant to *Rodriguez*, a police officer may lawfully prolong a traffic stop if the officer has developed a reasonable suspicion that the driver committed another offense).

The *Galloway* Court additionally noted that

the Pennsylvania Supreme Court recognized in *In Interest of A.A.*, … 195 A.3d 896 (Pa. 2018), that **a police officer may use information gathered during an initial traffic stop to justify a second investigatory detention**, regardless of whether the officer has indicated at some point during the initial stop that the subject is free to leave. *Id.* at 898. In reaching this conclusion, the *A.A.* Court reaffirmed this [C]ourt's decision in *Commonwealth v. Kemp*, … 961 A.2d 1247 (Pa. Super. 2008) (*en banc*), noting that the "totality of the circumstances approach allows the court to consider all facts at the officer's disposal and

- 11 -

does not require the court to disregard those adduced during a valid … traffic stop." ***A.A.***, 195 A.3d at 907 (citation omitted).

***Galloway***, 265 A.3d at 815 (emphasis added).

Here, in its Pa.R.A.P. 1925(a) opinion, the trial court (which also presided over the suppression proceedings) made the following findings of fact:

[T]he court finds that Officer Burger **credibly** testified that he stopped [Appellant's] vehicle for the reasons that he observed [Appellant] make a wide radius right hand turn onto a two-lane roadway[,] without using a proper turn signal[,] and then accelerate at a high rate of speed. Based upon his observations, **Officer Burger believed that** [Appellant] **may be driving under the influence of alcohol or a controlled substance as, in his training and experience, a wide radius turn is commonly associated with driving under the influence**. The court finds that Officer Burger not only possessed sufficient probable cause of a violation of [the traffic offenses] … based [] upon his observations of [Appellant's] driving to justify the initial traffic stop, but **he also possessed reasonable suspicion to stop** [Appellant's] **vehicle for the purpose of further investigating a suspected DUI violation**.

In addition to Officer Burger's observations of [Appellant's] driving immediately prior to their interaction, **he also observed additional cues and indicia of intoxication following the initial traffic stop that gave rise to the probability that** [Appellant] **was driving under the influence.** Specifically, once Officer Burger approached [Appellant's] vehicle and directed her to provide her driver's license, registration, and proof of insurance, [Appellant] began fumbling through her paperwork[;] she asked several times for Officer Burger to repeat what he was asking for[;] she continued to fumble through her paperwork[,] even though Officer Burger informed [Appellant] that her license was sitting right on her lap[;] she started talking about work and unrelated matters[;] she was not able to focus on one certain thing[;] she spoke in a mumbled speech[;] she had dry mouth[;] and she ignored Officer Burger's questions. Further, when Officer Burger asked [Appellant] where she was coming from, [Appellant] stated that she [had been] at Kevin's house on Harrison Avenue

to pick up paperwork for a [vehicle] inspection that he completed for her; however, [Appellant] was unable to provide Officer Burger with the paperwork that she allegedly just picked up.

Once Officer Burger returned to his patrol car, he inquired with County 911 to determine if [Appellant] had a criminal history of narcotics[-related convictions], and it was confirmed that she did. **Based upon all of the information available to him and in light of his training and experience, Officer Burger opined that** [**Appellant**] **was incapable of safely operating a motor vehicle due to being under the influence of some type of narcotic**, and he determined that he was going to request [Appellant] to perform standardized field sobriety testing and ask for consent to search to determine his suspicion. Contrary to [Appellant's] argument, this court finds that **upon an examination of the totality of the circumstances, Officer Burger possessed reasonable suspicion of criminal activity being afoot such that he was warranted in further investigating his suspicions of D**[**UI**]….

Trial Court Opinion, 11/8/23, at 10-11 (emphasis added; capitalization modified).

Our review confirms the trial court's findings are supported by the record, and its legal conclusion is sound. Contrary to Appellant's claim, Officer Burger (1) possessed a reasonable and objective basis for suspecting Appellant was driving while intoxicated, as opposed to a "mere hunch"; (2) conducted a lawful investigation into Appellant's intoxication; and (3) did not unlawfully prolong the interaction. *See Galloway*, 265 A.3d at 818 (reversing suppression court's grant of defendant's motion to suppress evidence, where the totality of the circumstances established that the police officer who conducted the traffic stop of vehicle in which defendant was a passenger (1) "was warranted to use information gathered during his initial traffic stop to

- 13 -

justify a second investigatory detention, irrespective of the fact that he informed the occupants of the vehicle that they would be free to leave shortly"; and (2) "had reasonable suspicion that [defendant] was engaged in [drug trafficking] activity sufficient to warrant a second, investigative detention" (footnote omitted)); *Benitez*, 218 A.3d at 478 (upholding trial court's ruling that police had reasonable suspicion justifying defendant's detention beyond the necessities of the initial traffic stop, where several factors combined to establish reasonable suspicion that criminal activity was afoot, including (1) defendant's vehicle was owned by a third party; (2) police noticed that there was only a single key in the ignition; (3) although the vehicle bore a Pennsylvania license plate, defendant told police he was driving from his home, located in New York, to Philadelphia). Moreover, we cannot disturb the suppression court's credibility findings, which are supported by the record. *See Ochoa*, 304 A.3d at 396.

Accordingly, we discern no error or abuse of the trial court's discretion in denying Appellant's suppression motion. As such, we affirm her judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/31/2024